# Traffic Consulting Agreement

This Traffic Consulting Agreement (this "**Agreement**"), dated as of May 28th, 2021 (the "**Effective Date**"), is by and between KorDev, LLC, a Wyoming limited liability company, with offices located at 2408 James St, Aliquippa, PA 15001 ("**Service Provider**") and Eagle Hemp LLC, a Florida limited liability company, with offices located at 2855 Interstate Drive, Suite 111, Lakeland, FL 33805 ("**Customer**" and together with Service Provider, the "**Parties**", and each a "**Party**").

WHEREAS, Service Provider and Customer desire to enter a Traffic Consulting Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Service Provider and Customer agree as follows:

1.      Services.    Service Provider shall provide to Customer the following services (the "**Services**"):  Traffic consulting, including identifying and placing marketing and advertisements designed to provide leads to Customer's sales funnels.  *Note*: Service Provider shall not be responsible for payment of any marketing or advertising, nor does Service Provider guarantee any traffic.  Further, Service Provider shall not be responsible in any fashion for any SEO or traffic drawn to Customer's site; Customer specifically waives any claims against Service Provider, whether sounding in contract or tort, resulting from traffic and/or sales regardless of any direct or consequential damages suffered by Customer.

2.      Service Provider Obligations. Service provider shall dedicate the time necessary to perform the traffic consulting services indicated in Section 1, *supra*.

3.      Customer Obligations. Customer shall:

3.1      Designate one of its employees or agents to serve as its primary contact with respect to this Agreement and to act as its authorized representative with respect to matters pertaining to this Agreement (the "**Customer Contract Manager**"), with such designation to remain in force unless and until a successor Customer Contract Manager is appointed.

3.2      Require that the Customer Contract Manager respond promptly to any reasonable requests from Service Provider for instructions, information, or approvals required by Service Provider to provide the Services.

3.3      Customer shall send all pertinent documents requested by Service Provider and cooperate fully with Service Provider to enable Service Provider to perform the stated services in this Agreement.

3.4      Take all steps necessary, including obtaining any required licenses or consents, to prevent Customer-caused delays in Service Provider's provision of the Services.

Exhibit C

3.5     Customer shall be responsible for the accuracy, completeness, and propriety of information concerning its products and services which it furnishes to Service Provider verbally or in writing in connection with the performance of this Agreement.

4.     Fees and Expenses.

4.1     In consideration of the provision of the Services by the Service Provider and the rights granted to Customer under this Agreement, Customer shall pay to Service Provider $10,000.00 per month. Further, Customer shall pay to Service Provider a 0.75% revenue share on all weekly revenues.  Payment to Service Provider of such fees and the reimbursement of expenses pursuant to this Section 4 shall constitute payment in full for the performance of the Services.  Payments shall be made by wire transfer to:

> KorDev, LLC
> 2408 James Street
> Aliquippa, PA 15001
> PNC Bank
> Routing No.: 043000096
> Account No.: 1053047675

4.2     Full monthly payments of $10,000.00 are required on the 1st day of each month following delivery of the previous month's invoice.  A grace period of two (2) days will be granted, after which a 15% late feel will apply. Service Provider shall have the right to halt performance of its work until payment in full is received each month.

4.3     Full weekly revenue share payments shall be paid each Monday (or, if Monday is a holiday, then on Tuesday) following the calculation of the previous week's revenue.  A grace period of one (1) day will be granted, after which a 15% late fee will apply. Service Provider shall have the right to halt performance of its work until payment in full is received each month.

4.4     Customer shall reimburse Service Provider for all reasonable expenses incurred within fifteen (15) days of receipt by the Customer of an invoice from Service Provider accompanied by receipts and reasonable supporting documentation.

4.5     Customer shall be responsible for all sales, use, and excise taxes, and any other similar taxes, duties, and charges of any kind imposed by any federal, state, or local governmental entity on any amounts payable by Customer hereunder; provided, that in no event shall Customer pay or be responsible for any taxes imposed on, or with respect to, Service Provider's income, revenues, gross receipts, personnel, or real or personal property, or other assets.

4.6     Customer acknowledges that the services contemplated in this Agreement are intangible services and that by rendering monthly payment according to the Schedule of Payments, Customer is satisfied with the Work Service Provider has performed.

4.7    Projects that go dormant for longer than forty-five (45) days as a result of Customer's delay will incur fee of $1,000 to resume work at the discretion of Service Provider.

5.    <u>Term</u>.   The term shall be twelve (12) months, after which this agreement shall be renewed on a month-to-month basis unless one of the parties terminates this agreement pursuant to Section 5, *infra*.

6.    <u>Termination</u>.  Either party may terminate this Agreement with thirty (30) days' notice; should Customer initiate termination without cause, it shall be immediately responsible for the remainder of the contract.

7.    <u>Warranties and Limitation of Liability</u>.  SERVICE PROVIDER MAKES NO WARRANTIES. ALL WARRANTIES, EXPRESS AND IMPLIED, ARE EXPRESSLY DISCLAIMED.

8.    <u>Limitation of Liability</u>.

8.1    IN NO EVENT SHALL SERVICE PROVIDER BE LIABLE TO CUSTOMER OR TO ANY THIRD PARTY FOR ANY LOSS OF USE, REVENUE, OR PROFIT OR LOSS OF DATA OR DIMINUTION IN VALUE, OR FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL, OR PUNITIVE DAMAGES WHETHER ARISING OUT OF BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, REGARDLESS OF WHETHER SUCH DAMAGE WAS FORESEEABLE AND WHETHER OR NOT SERVICE PROVIDER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND NOTWITHSTANDING THE FAILURE OF ANY AGREED OR OTHER REMEDY OF ITS ESSENTIAL PURPOSE.

8.2    IN NO EVENT SHALL SERVICE PROVIDER'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER ARISING OUT OF OR RELATED TO BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, EXCEED THE AGGREGATE AMOUNTS PAID OR PAYABLE TO SERVICE PROVIDER PURSUANT TO THIS AGREEMENT IN THE ONE (1) YEAR PERIOD PRECEDING THE EVENT GIVING RISE TO THE CLAIM.

9.    <u>Entire Agreement</u>. This Agreement constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, regarding such subject matter.

10.    <u>Severability</u>. If any term or provision of this Agreement is found by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon a determination that any term or provision is invalid, illegal, or unenforceable, the Parties shall negotiate in good faith to modify this Agreement to effect the original intent of the Parties as

closely as possible in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

11.    Amendments. No amendment to or modification of or rescission, termination, or discharge of this Agreement is effective unless it is in writing, identified as an amendment to or rescission, termination, or discharge of this Agreement and signed by an authorized representative of each Party.

12.    Waiver. No waiver by any Party of any of the provisions of this Agreement shall be effective unless explicitly set forth in writing and signed by the Party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

13.    Successors and Assigns. This Agreement is binding on and inures to the benefit of the Parties to this Agreement and their respective permitted successors and permitted assigns.

14.    No Third-Party Beneficiaries. This Agreement benefits solely the Parties to this Agreement and their respective permitted successors and assigns and nothing in this Agreement, express or implied, confers on any other person or entity any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

15.    Choice of Law. This Agreement and all related documents are governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania, United States of America (including its statutes of limitations).

16.    Choice of Forum. Each Party irrevocably and unconditionally agrees that it will not commence any action, litigation, or proceeding of any kind whatsoever against the other Party in any way arising from or relating to this Agreement, including all exhibits, schedules, attachments, and appendices attached to this Agreement, and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the US District Court for the Western District of Pennsylvania or the courts of the Commonwealth of Pennsylvania sitting in Allegheny County, and any appellate court from any thereof. Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in the US District Court for the Western District of Pennsylvania or the courts of the Commonwealth of Pennsylvania sitting in Allegheny County. Each Party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

17.    WAIVER OF JURY TRIAL. EACH PARTY ACKNOWLEDGES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT, INCLUDING EXHIBITS, SCHEDULES, ATTACHMENTS, AND APPENDICES ATTACHED TO THIS AGREEMENT, IS

LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING ANY EXHIBITS, SCHEDULES, ATTACHMENTS, OR APPENDICES ATTACHED TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY.

18.    <u>Attorneys' Fees and Costs</u>.  If any legal action or other proceeding is brought in connection with this Agreement, the successful or prevailing Party, if any, shall be entitled to recover reasonable attorneys' fees and other related costs, in addition to any other relief to which that Party is entitled. In the event that it is the subject of dispute, the court or trier of fact who presides over such legal action or proceeding is empowered to determine which Party, if any, is the prevailing party in accordance with this provision.

19.    <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, email, or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date by their respective duly authorized officers.

Eagle Hemp LLC

By_____*Barry Atkins*_____

Name: Barry Atkins

Title: President & COO

KorDev, LLC

By_____*Michael Bryant*_____

Name: Michael J. Bryant

Title: CEO

 

## Document Details

| | |
|---|---|
| **Title** | KorDev/Eagle Hemp - Traffic Consulting Agreement |
| **File Name** | Eagle Hemp LLC - Traffic Consulting Agreement.pdf |
| **Document ID** | f44c7e0904ab45e2835afe0b71add0ce |
| **Fingerprint** | 279b9d3752a7e6bb7489c51017c9e3d1 |
| **Status** | Completed |

## Document History

| | | |
|---|---|---|
| **Document Created** | Document Created by Owen McGrann (owen@mcgrannlaw.com)<br>Fingerprint: 279b9d3752a7e6bb7489c51017c9e3d1 | May 27 2021<br>10:55PM UTC |
| **Document Sent** | Document Sent to Michael Bryant (michael@kordev.co) | May 27 2021<br>10:55PM UTC |
| **Document Sent** | Document Sent to Barry Atkins (barry.atkins@eaglehemp.net) | May 27 2021<br>10:55PM UTC |
| **Document Viewed** | Document Viewed by Barry Atkins (barry.atkins@eaglehemp.net)<br>IP: 131.148.93.66 | May 27 2021<br>11:15PM UTC |
| **Document Viewed** | Document Viewed by Michael Bryant (michael@kordev.co)<br>IP: 24.3.3.80 | May 27 2021<br>11:26PM UTC |
| **Document Signed** | Document Signed by Michael Bryant (michael@kordev.co)<br>IP: 24.3.3.80 | May 27 2021<br>11:27PM UTC |
| **Document Viewed** | Document Viewed by Barry Atkins (barry.atkins@eaglehemp.net)<br>IP: 131.148.93.65 | May 28 2021<br>01:04PM UTC |
| **Document Signed** | Document Signed by Barry Atkins (barry.atkins@eaglehemp.net)<br>IP: 131.148.93.65 | May 28 2021<br>01:16PM UTC |
| **Document Completed** | This document has been completed.<br>Fingerprint: d0e5f9d7152353fdaf0c576eeae5f9af | May 28 2021<br>01:16PM UTC |

