# Asset Purchase Agreement

between

**WELL BEING LABS, LLC**

and

**EAGLE HEMP LLC**

dated as of

July 12, 2020

Exhibit D

TABLE OF CONTENTS

ARTICLE I PURCHASE AND SALE ..................................................................................................4

    Section 1.01 Purchase and Sale of Assets. ..................................................................................4

    Section 1.04 Purchase Price. .......................................................................................................5

    Section 1.06 Non-Assignable Assets. .........................................................................................5

ARTICLE II CLOSING .....................................................................................................................6

    Section 2.01 Closing. ...................................................................................................................6

    Section 2.02 Closing Deliverables. .............................................................................................6

ARTICLE III REPRESENTATIONS AND WARRANTIES OF SELLER ......................................7

    Section 3.01 Organization and Authority of Seller. ...................................................................7

    Section 3.02 No Conflicts or Consents. ......................................................................................7

    Section 3.03 Financial Statements. ..............................................................................................8

    Section 3.04 Absence of Certain Changes, Events and Conditions. ...........................................8

    Section 3.05 Assigned Contracts. ...............................................................................................8

    Section 3.06 Title to Tangible Personal Property. ......................................................................8

    Section 3.07 Sufficiency of Assets. .............................................................................................8

    Section 3.08 Legal Proceedings; Governmental Orders. ............................................................8

    Section 3.09 Compliance with Laws. ..........................................................................................9

    Section 3.10 Taxes. .....................................................................................................................9

    Section 3.11 Brokers. ..................................................................................................................9

    Section 3.12 No Other Representations and Warranties. .............................................................9

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF BUYER ......................................9

    Section 4.01 Organization and Authority of Buyer. ................................................................10

    Section 4.02 No Conflicts; Consents. .......................................................................................10

    Section 4.03 Solvency; Sufficiency of Funds. ..........................................................................10

    Section 4.04 Legal Proceedings. ...............................................................................................11

    Section 4.05 Brokers. ................................................................................................................11

    Section 4.06 Independent Investigation. ...................................................................................11

ARTICLE V COVENANTS .............................................................................................................11

    Section 5.02 Public Announcements. ........................................................................................11

    Section 5.03 Bulk Sales Laws. ..................................................................................................11

    Section 5.04 Transfer Taxes. .....................................................................................................11

Section 5.05 Further Assurances..................................................................................................... 11

ARTICLE VI INDEMNIFICATION.................................................................................................. 12

Section 6.01 Survival. ................................................................................................................... 12

Section 6.02 Indemnification by Seller.......................................................................................... 12

Section 6.03 Indemnification by Buyer.......................................................................................... 12

Section 6.04 Certain Limitations.................................................................................................... 12

Section 6.05 Indemnification Procedures....................................................................................... 13

Section 6.06 Tax Treatment of Indemnification Payments. ............................................................ 13

Section 6.07 Exclusive Remedies. ................................................................................................. 14

ARTICLE VII MISCELLANEOUS .................................................................................................. 14

Section 7.01 Expenses................................................................................................................... 14

Section 7.02 Notices...................................................................................................................... 14

Section 7.03 Interpretation; Headings. .......................................................................................... 15

Section 7.04 Severability. .............................................................................................................. 15

Section 7.05 Entire Agreement...................................................................................................... 15

Section 7.06 Successors and Assigns; Assignment. ....................................................................... 15

Section 7.07 Amendment and Modification; Waiver. ..................................................................... 15

Section 7.08 Governing Law; Submission to Jurisdiction[; Waiver of Jury Trial]........................... 15

Section 7.09 Counterparts.............................................................................................................. 16

Section 7.10 Non-Recourse............................................................................................................ 16

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**") dated as of July 12, 2021, is entered into between Well Being Labs LLC, a Delaware limited liability company with offices located at 23616 Via Carino Lane, Bonita Springs, FL 34135 ("**Seller**"), and Eagle Hemp LLC, a Florida limited liability company, with offices located at 2855 Interstate Drive, Suite 111, Lakeland, FL 33805 ("**Buyer**"). Capitalized terms used in this Agreement have the meanings given to such terms herein.

### RECITALS

**WHEREAS**, Seller is engaged in the business of selling branded CBD products (the "**Business**"); and

**WHEREAS**, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller, substantially all the assets of the Business, subject to the terms and conditions set forth herein;

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### ARTICLE I
### PURCHASE AND SALE

**Section 1.01   Purchase and Sale of Assets.** Subject to the terms and conditions set forth herein, at the Closing, Seller shall sell, convey, assign, transfer and deliver to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title and interest in, to and under all of the tangible and intangible assets, properties and rights of every kind and nature and wherever located, which relate to, or are used or held for use in connection with, the Business (collectively, the "**Purchased Assets**"), including the following:

(a)      all accounts receivable of the Business ("**Accounts Receivable**");

(b)      all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts and other inventories of the Business ("**Inventory**");

(c)      all Contracts (the "**Assigned Contracts**"). For purposes of this Agreement: (i) "**Contracts**" means all contracts, leases, licenses, instruments, notes, commitments, undertakings, indentures, joint ventures and all other agreements, commitments and legally binding arrangements, whether written or oral;

(d)      all rights to any actions, claims, or causes of action of any nature available to or being pursued by Seller against any counterparties, including vendors, to the Assigned Contracts, to the extent related to the Business, the Purchased Assets, whether arising by way of counterclaim or otherwise;

(e)      all customer data, processing, Seller brands (including, but not limited to Wellness Works), and all attendant URLs;

(f)     all prepaid expenses, credits, advance payments (subject to Section 1.04), security, deposits, charges, sums and fees;

(g)     all of Seller's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Purchased Assets;

(h)     originals or, where not available, copies, of all books and records, including books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records and data (including all correspondence with any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any arbitrator, court or tribunal of competent jurisdiction (each, a "**Governmental Authority**")), sales material and records, strategic plans and marketing and promotional surveys, material and research (collectively, "**Books and Records**");

(i)     all goodwill associated with any of the assets described in the foregoing clauses.

**Section 1.02   Consideration.** The aggregate consideration for the Purchased Assets shall be the execution of the Master Services Agreement between Eagle Hemp LLC and KorDev, LLC (the "**MSA**") executed simultaneously with this Asset Purchase Agreement, repayment of the Merchant Reserves as defined in Section 1.03. Further, pursuant to Section 1.01(d), Seller shall assign to Buyer all claims or potential claims against vendors for breach of contract, breach of warranty, or any other cause of action.

**Section 1.03   Merchant Reserves.**  Buyer shall assume ownership of all of Seller's merchant accounts, some or all of which have active merchant reserve balances (the "Merchant Reserves").  After deducting the total amount of chargebacks paid by Seller in the six months after Closing, buyer shall pay over to Michael Bryant all remaining funds in the Merchant Reserve accounts existing on January 10, 2022.

**Section 1.04   Non-Assignable Assets.**

(a)     Notwithstanding anything to the contrary in this Agreement, this Agreement shall not constitute a sale, assignment or transfer of any Purchased Asset if such sale, assignment or transfer: (i) violates applicable Law; or (ii) requires the consent or waiver of a Person who is not a party to this Agreement or an Affiliate of a party to this Agreement and such consent or waiver has not been obtained prior to the Closing.

(b)     To the extent that any Purchased Asset or cannot be transferred to Buyer pursuant to this Section 1.07, Buyer and Seller shall use commercially reasonable efforts to enter into such arrangements (such as subleasing, sublicensing or subcontracting) to provide to the parties the economic and, to the extent permitted under applicable Law, operational equivalent of the transfer of such Purchased Asset to Buyer as of the Closing. To the extent

permitted under applicable Law, Seller shall, at Buyer's expense, hold in trust for and pay to Buyer promptly upon receipt thereof, all income, proceeds and other monies received by Seller from and after the Closing Date, to the extent related to such Purchased Asset in connection with the arrangements under this Section 1.07. Seller shall be permitted to set off against such amounts all direct costs associated with the retention and maintenance of such Purchased Assets.

## ARTICLE II
### CLOSING

**Section 2.01  Closing.** Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place at 5:30 p.m. Eastern time on July 12, 2021, simultaneously with the execution of this Agreement, or at such other time or place or in such other manner as Seller and Buyer may mutually agree upon in writing. The date on which the Closing is to occur is herein referred to as the "**Closing Date**."

**Section 2.02  Closing Deliverables.**

(a)      At the Closing, Seller shall deliver to Buyer the following:

(i)      a bill of sale in the form of **Exhibit A** attached hereto (the "**Bill of Sale**") and duly executed by Seller, transferring the Tangible Personal Property included in the Purchased Assets to Buyer;

(ii)      an assignment and assumption agreement in the form of **Exhibit B** attached hereto (the "**Assignment and Assumption Agreement**") and duly executed by Seller, effecting the assignment to and assumption by Buyer of the Purchased Assets;

(iii)      a certificate of the Secretary (or equivalent officer) of Seller certifying as to (A) the resolutions of the board of directors and the members of Seller, which authorize the execution, delivery and performance of this Agreement, the Bill of Sale, the Assignment and Assumption Agreement and the other agreements, instruments and documents required to be delivered in connection with this Agreement or at the Closing (collectively, the "**Transaction Documents**") and the consummation of the transactions contemplated hereby and thereby and (B) the names and signatures of the officers of Seller authorized to sign this Agreement and the other Transaction Documents; and

(iv)      such other customary instruments of transfer or assumption, filings or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to the transactions contemplated by this Agreement.

(b)      At the Closing, Buyer shall deliver to Seller the following:

(i)      the executed Master Services Agreement duly executed by Buyer;

(ii) the Assignment and Assumption Agreement duly executed by Buyer; and

(iii) a certificate of the Secretary (or equivalent officer) of Buyer certifying as to (A) the resolutions of the board of directors of Buyer, which authorize the execution, delivery and performance of this Agreement and the other Transaction Documents and the consummation of the transactions contemplated hereby and thereby and (B) the names and signatures of the officers of Buyer authorized to sign this Agreement and the other Transaction Documents.

## ARTICLE III
### REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this Article III are true and correct as of the date hereof.

**Section 3.01  Organization and Authority of Seller.** Seller is a corporation duly organized, validly existing and in good standing under the Laws of the State of Delaware. Seller has all necessary corporate power and authority to enter into this Agreement and the other Transaction Documents to which Seller is a party, to carry out its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Seller of this Agreement and any other Transaction Document to which Seller is a party, the performance by Seller of its obligations hereunder and thereunder, and the consummation by Seller of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate action on the part of Seller. This Agreement and the Transaction Documents constitute legal, valid and binding obligations of Seller enforceable against Seller in accordance with their respective terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding at law or in equity).

**Section 3.02  No Conflicts or Consents.** The execution, delivery and performance by Seller of this Agreement and the other Transaction Documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) violate or breach any provision of the certificate of incorporation or by-laws of Seller; (b) violate or breach any provision of any Law or Governmental Order applicable to Seller, the Business or the Purchased Assets; (c) require the consent, notice or other action by any Person under, conflict with, violate or breach, constitute a default under or result in the acceleration of any Assigned Contract; or (d) require any consent, permit, Governmental Order, filing or notice from, with or to any Governmental Authority by or with respect to Seller in connection with the execution and delivery of this Agreement and the other Transaction Documents and the consummation of the transactions contemplated hereby and thereby; except, in the cases of clauses (b) and (c), where the violation, breach, conflict, default, acceleration or failure to obtain consent or give notice would not have a Material Adverse Effect and, in the case of clause (d), where such consent, permit, Governmental Order, filing or notice which, in the aggregate, would not have a Material Adverse Effect. For purposes of this Agreement: (i) "**Law**" means any statute, law, ordinance, regulation, rule, code,

order, constitution, treaty, common law or other requirement or rule of law of any Governmental Authority; (ii) "**Governmental Order**" means any order, writ, judgment, injunction, decree, stipulation, determination or award entered by or with any Governmental Authority; (iii) "**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association or other entity; and (iv) "**Material Adverse Effect**" means any event, occurrence, fact, condition or change that is materially adverse to the business, results of operations, financial condition or assets of the Business, taken as a whole.

**Section 3.03    Financial Statements.** Buyer acknowledges that it has had adequate opportunity to review Seller's financial statements consisting of the balance sheet of the Business and related statements of income and retained earnings, members' equity and cash flow for the years then ended (the "**Financial Statements**").

**Section 3.04    Absence of Certain Changes, Events and Conditions.** Except as expressly contemplated by this Agreement, from the time Buyer reviewed Seller's Financial Statements until the date of this Agreement, Seller has operated the Business in the ordinary course of business in all material respects and there has not been any change, event, condition or development that is materially adverse to: (a) the business, results of operations, financial condition or assets of the Business, taken as a whole; or (b) the ability of Seller to consummate the transactions contemplated hereby.

**Section 3.05    Assigned Contracts.** Seller is not in breach of or default under any Assigned Contract, except for such breaches or defaults that would not have a Material Adverse Effect.

**Section 3.06    Title to Tangible Personal Property.** Seller has good and valid title to all Tangible Personal Property included in the Purchased Assets, free and clear of any lien, charge, claim, pledge, security interest or other similar encumbrance (each, an "**Encumbrance**"), except for: (a) liens for Taxes not yet due and payable or being contested in good faith by appropriate procedures; (b) mechanics', carriers', workmen's, repairmen's or other like liens arising or incurred in the ordinary course of business; (c) liens arising under original purchase price conditional sales contracts and equipment leases with third parties entered into in the ordinary course of business; and (d) other imperfections of title or Encumbrances, if any, that would not have a Material Adverse Effect.

**Section 3.07    Sufficiency of Assets.** The Purchased Assets are sufficient for the continued conduct of the Business after the Closing in substantially the same manner as conducted prior to the Closing and constitute all of the rights, property and assets necessary to conduct the Business as currently conducted.

**Section 3.08    Legal Proceedings; Governmental Orders.**

(a)    There are no claims, actions, suits, investigations or other legal proceedings (collectively, "**Actions**") pending or, to Seller's knowledge, threatened against or by Seller relating to or affecting the Business, the Purchased Assets or the Assumed Liabilities, which if determined adversely to Seller would result in a Material Adverse Effect.

(b)     There are no outstanding Governmental Orders against, relating to or affecting the Business or the Purchased Assets, which would have a Material Adverse Effect.

**Section 3.09   Compliance with Laws.** Seller is in compliance with all Laws applicable to the conduct of the Business as currently conducted or the ownership and use of the Purchased Assets, except where the failure to be in compliance would not have a Material Adverse Effect.

**Section 3.10   Taxes.**

(a)     Except as would not have a Material Adverse Effect, Seller has filed (taking into account any valid extensions) all material Tax Returns with respect to the Business required to be filed by Seller for any tax periods prior to Closing and has paid all Taxes shown thereon as owing. Seller is not currently the beneficiary of any extension of time within which to file any material Tax Return other than extensions of time to file Tax Returns obtained in the ordinary course of business.

(b)     The representations and warranties set forth in this Section 3.10 are Seller's sole and exclusive representations and warranties regarding Tax matters.

(c)     The term "**Taxes**" means all federal, state, local, foreign and other income, gross receipts, sales, use, production, ad valorem, transfer, documentary, franchise, registration, profits, license, withholding, payroll, employment, unemployment, excise, severance, stamp, occupation, premium, property (real or personal), customs, duties or other taxes, fees, assessments or charges of any kind whatsoever, together with any interest, additions or penalties with respect thereto.

**Section 3.11   Brokers.** No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement or any other Transaction Document based upon arrangements made by or on behalf of Seller.

**Section 3.12   No Other Representations and Warranties.** Except for the representations and warranties contained in this Article III, neither Seller nor any other Person has made or makes any other express or implied representation or warranty, either written or oral, on behalf of Seller, including any representation or warranty as to the accuracy or completeness of any information, documents or material regarding the Business and the Purchased Assets furnished or made available to Buyer and its Representatives in any form (including any information, documents, or material delivered to Buyer on behalf of Seller for purposes of this Agreement or any management presentations made in expectation of the transactions contemplated hereby), or as to the future revenue, profitability, or success of the Business, or any representation or warranty arising from statute or otherwise in Law. For purposes of this Agreement, "**Representative**" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors, counsel, accountants and other agents of such Person.

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES OF BUYER**

Buyer represents and warrants to Seller that the statements contained in this Article IV are true and correct as of the date hereof.

**Section 4.01    Organization and Authority of Buyer.** Buyer is a corporation duly organized, validly existing and in good standing under the Laws of the State of Florida. Buyer has all necessary corporate power and authority to enter into this Agreement and the other Transaction Documents to which Buyer is a party, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Buyer of this Agreement and any other Transaction Document to which Buyer is a party, the performance by Buyer of its obligations hereunder and thereunder and the consummation by Buyer of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate action on the part of Buyer. This Agreement and the Transaction Documents constitute legal, valid and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding at law or in equity).

**Section 4.02    No Conflicts; Consents.** The execution, delivery and performance by Buyer of this Agreement and the other Transaction Documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) violate or breach any provision of the certificate of incorporation or by-laws of Buyer; (b) violate or breach any provision of any Law or Governmental Order applicable to Buyer; (c) require the consent, notice or other action by any Person under, conflict with, violate or breach, constitute a default under or result in the acceleration of any agreement to which Buyer is a party; or (d) require any consent, permit, Governmental Order, filing or notice from, with or to any Governmental Authority by or with respect to Buyer in connection with the execution and delivery of this Agreement and the other Transaction Documents and the consummation of the transactions contemplated hereby and thereby; except, in the cases of clauses (b) and (c), where the violation, breach, conflict, default, acceleration or failure to obtain consent or give notice would not have a material adverse effect on Buyer's ability to consummate the transactions contemplated hereby and, in the case of clause (d), where such consent, permit, Governmental Order, filing or notice which, in the aggregate, would not have a material adverse effect on Buyer's ability to consummate the transactions contemplated hereby.

**Section 4.03    Solvency; Sufficiency of Funds.** Immediately after giving effect to the transactions contemplated hereby, Buyer shall be solvent and shall: (a) be able to pay its debts as they become due; (b) own property that has a fair saleable value greater than the amounts required to pay its debts (including a reasonable estimate of the amount of all Liabilities); and (c) have adequate capital to carry on its business. No transfer of property is being made and no obligation is being incurred in connection with the transactions contemplated hereby with the intent to hinder, delay or defraud either present or future creditors of Buyer or Seller. In connection with the transactions contemplated hereby, Buyer has not incurred, nor plans to incur, debts beyond its ability to pay as they become absolute and matured.

Asset Purchase Agreement

**Section 4.04    Legal Proceedings.** There are no Actions pending or, to Buyer's knowledge, threatened against or by Buyer that challenge or seek to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement.

**Section 4.05    Brokers.** No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement or any other Transaction Document based upon arrangements made by or on behalf of Buyer.

**Section 4.06    Independent Investigation.** Buyer has conducted its own independent investigation, review and analysis of the Business and the Purchased Assets, and acknowledges that it has been provided adequate access to the personnel, properties, assets, premises, books and records and other documents and data of Seller for such purpose. Buyer acknowledges and agrees that: (a) in making its decision to enter into this Agreement and to consummate the transactions contemplated hereby, Buyer has relied solely upon its own investigation and the express representations and warranties of Seller set forth in Article III of this Agreement; and (b) neither Seller nor any other Person has made any representation or warranty as to Seller, the Business, the Purchased Assets or this Agreement, except as expressly set forth in Article III of this Agreement.

**ARTICLE V**
**COVENANTS**

**Section 5.01    Public Announcements.** Unless otherwise required by applicable Law, no party to this Agreement shall make any public announcements in respect of this Agreement or the transactions contemplated hereby without the prior written consent of the other party (which consent shall not be unreasonably withheld, conditioned or delayed), and the parties shall cooperate as to the timing and contents of any such announcement.

**Section 5.02    Bulk Sales Laws.** The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer or similar Laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Purchased Assets to Buyer.

**Section 5.03    Transfer Taxes.** All transfer, sales, use, registration, documentary, stamp, value added and other such Taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the other Transaction Documents, if any, shall be borne and paid by Buyer when due. Buyer shall, at its own expense, timely file any Tax Return or other document with respect to such Taxes or fees (and Seller shall cooperate with respect thereto as necessary).

**Section 5.04    Further Assurances.** Following the Closing, each of the parties hereto shall, and shall cause their respective Affiliates to, execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the other Transaction Documents.

Asset Purchase Agreement

## ARTICLE VI
## INDEMNIFICATION

**Section 6.01    Survival.** Subject to the limitations and other provisions of this Agreement, the representations and warranties contained herein shall survive the Closing and shall remain in full force and effect until the date that is three months from the Closing Date. None of the covenants or other agreements contained in this Agreement shall survive the Closing Date other than those which by their terms contemplate performance after the Closing Date, and each such surviving covenant and agreement shall survive the Closing for the period contemplated by its terms. Notwithstanding the foregoing, any claims asserted in good faith with reasonable specificity (to the extent known at such time) and in writing by notice from the non-breaching party to the breaching party prior to the expiration date of the applicable survival period shall not thereafter be barred by the expiration of such survival period and such claims shall survive until finally resolved.

**Section 6.02    Indemnification by Seller.** Subject to the other terms and conditions of this Article VI, Seller shall indemnify Buyer against, and shall hold Buyer harmless from and against, any and all losses, damages, liabilities, deficiencies, Actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind, including reasonable attorneys' fees (collectively, "**Losses**"), incurred or sustained by, or imposed upon, Buyer based upon, arising out of, with respect to or by reason of:

(a)    any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement; or

(b)    any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Seller pursuant to this Agreement.

**Section 6.03    Indemnification by Buyer.** Subject to the other terms and conditions of this Article VI, Buyer shall indemnify Seller against, and shall hold Seller harmless from and against, any and all Losses incurred or sustained by, or imposed upon, Seller based upon, arising out of or with respect to:

(a)    any inaccuracy in or breach of any of the representations or warranties of Buyer contained in this Agreement; or

(b)    any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Buyer pursuant to this Agreement.

**Section 6.04    Certain Limitations.** The party making a claim under this Article VI is referred to as the "**Indemnified Part**y," and the party against whom such claims are asserted under this Article VI is referred to as the "**Indemnifying Party**." The indemnification provided for in Section 6.02 and Section 6.03 shall be subject to the following limitations:

(a)    The Indemnifying Party shall not be liable to the Indemnified Party for indemnification under Section 6.02(a) or Section 6.03(a), as the case may be, until the aggregate amount of all Losses in respect of indemnification under Section 6.02(a) or Section

6.03(a) exceeds $500,000.00 (the "**Deductible**"), in which event the Indemnifying Party shall only be required to pay or be liable for Losses in excess of the Deductible.

(b)     The aggregate amount of all Losses for which an Indemnifying Party shall be liable pursuant to Section 6.02(a) or Section 6.03(a), as the case may be, shall not exceed $25,000.00.

(c)     In no event shall any Indemnifying Party be liable to any Indemnified Party for any punitive, incidental, consequential, special or indirect damages, including loss of future revenue or income, loss of business reputation or opportunity relating to the breach or alleged breach of this Agreement, or diminution of value or any damages based on any type of multiple.

(d)     Seller shall not be liable under this Article VI for any Losses based upon or arising out of any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement if Buyer had knowledge of such inaccuracy or breach prior to the Closing.

**Section 6.05   Indemnification Procedures.** Whenever any claim shall arise for indemnification hereunder, the Indemnified Party shall promptly provide written notice of such claim to the Indemnifying Party. Such notice by the Indemnified Party shall: (a) describe the claim in reasonable detail; (b) include copies of all material written evidence thereof; and (c) indicate the estimated amount, if reasonably practicable, of the Loss that has been or may be sustained by the Indemnified Party. In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any Action by a Person who is not a party to this Agreement, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such Action with counsel reasonably satisfactory to the Indemnified Party. The Indemnified Party shall be entitled to participate in the defense of any such Action, with its counsel and at its own cost and expense, subject to the Indemnifying Party's right to control the defense thereof. If the Indemnifying Party does not assume the defense of any such Action, the Indemnified Party may, but shall not be obligated to, defend against such Action in such manner as it may deem appropriate, including settling such Action, after giving notice of it to the Indemnifying Party, on such terms as the Indemnified Party may deem appropriate and no action taken by the Indemnified Party in accordance with such defense and settlement shall relieve the Indemnifying Party of its indemnification obligations herein provided with respect to any damages resulting therefrom. Seller and Buyer shall cooperate with each other in all reasonable respects in connection with the defense of any claim, including: (i) making available (subject to the provisions of Section 5.01) records relating to such claim; and (ii) furnishing, without expense (other than reimbursement of actual out-of-pocket expenses) to the defending party, management employees of the non-defending party as may be reasonably necessary for the preparation of the defense of such claim. The Indemnifying Party shall not settle any Action without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld, conditioned or delayed).

**Section 6.06   Tax Treatment of Indemnification Payments.** All indemnification payments made under this Agreement shall be treated by the parties as an adjustment to the Purchase Price for Tax purposes, unless otherwise required by Law.

**Section 6.07    Exclusive Remedies.** The parties acknowledge and agree that their sole and exclusive remedy with respect to any and all claims (other than claims arising from fraud on the part of a party hereto in connection with the transactions contemplated by this Agreement) for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement shall be pursuant to the indemnification provisions set forth in this Article VI. In furtherance of the foregoing, each party hereby waives, to the fullest extent permitted under Law, any and all rights, claims and causes of action for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement it may have against the other parties hereto and their Affiliates and each of their respective Representatives arising under or based upon any Law, except pursuant to the indemnification provisions set forth in this Article VI. Nothing in this Section 6.07 shall limit any Person's right to seek and obtain any equitable relief to which such Person shall be entitled or to seek any remedy on account of any fraud by any party hereto.

## ARTICLE VII
### MISCELLANEOUS

**Section 7.01    Expenses.** Except as otherwise expressly provided herein (including Section 5.04 hereof), all costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

**Section 7.02    Notices.** All notices, claims, demands and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or email of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section):

| | |
|---|---|
| **If to Seller:** | 23616 Via Carino Lane<br>Bonita Springs, FL 34135<br>Email: michael@michaeljbryant.com<br>Attention: Michael Bryant |
| with a copy to:<br>(which shall not<br>constitute notice) | McGrannLAW LLC<br>4108 Spruce Road<br>Gibsonia, PA 15044<br>Email: owen@mcgrannlaw.com<br>Attention: Owen McGrann |
| **If to Buyer:** | 2855 Interstate Drive, Suite 111 |

Lakeland, FL 33805
Email: barry.atkins@eaglehemp.net
Attention: Barry Atkins

**Section 7.03   Interpretation; Headings.** This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 7.04   Severability.** If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement.

**Section 7.05   Entire Agreement.** This Agreement and the other Transaction Documents constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous representations, warranties, understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and those in the other Transaction Documents, and the Exhibits, the statements in the body of this Agreement will control.

**Section 7.06   Successors and Assigns; Assignment.** This Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors and permitted assigns. Neither party may assign any of its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld, conditioned or delayed. Any purported assignment in violation of this Section shall be null and void. No assignment shall relieve the assigning party of any of its obligations hereunder.

**Section 7.07   Amendment and Modification; Waiver.** This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No failure to exercise, or delay in exercising, any right or remedy arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.

**Section 7.08   Governing Law; Submission to Jurisdiction; Waiver of Jury Trial.**

(a)      All matters arising out of or relating to this Agreement shall be governed by and construed in accordance with the internal laws of the Commonwealth of Pennsylvania without giving effect to the conflict of law provisions thereof to the extent such provisions would require or permit the application of the laws of any jurisdiction other than the Commonwealth of Pennsylvania. Any legal suit, action, proceeding or dispute arising out of or relating to this Agreement, the other Transaction Documents or the transactions contemplated hereby or thereby may be instituted in the federal courts of the United States

of America or the courts of the Commonwealth of Pennsylvania in each case located in the city of Pittsburgh and county of Allegheny, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, proceeding or dispute.

(b) EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL ACTION, PROCEEDING, CAUSE OF ACTION OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING ANY EXHIBITS AND SCHEDULES ATTACHED TO THIS AGREEMENT, THE OTHER TRANSACTION DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT: (I) NO REPRESENTATIVE OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION; (II) EACH PARTY HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER; (III) EACH PARTY MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY; AND (IV) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

**Section 7.09    Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**Section 7.10    Non-Recourse.** This Agreement may only be enforced against, and any claim, action, suit or other legal proceeding based upon, arising out of or related to this Agreement, or the negotiation, execution or performance of this Agreement, may only be brought against the entities that are expressly named as parties hereto and then only with respect to the specific obligations set forth herein with respect to such party. No past, present or future director, officer, employee, incorporator, manager, member, partner, stockholder, Affiliate, agent, attorney or other Representative of any party hereto or of any Affiliate of any party hereto, or any of their successors or permitted assigns, shall have any liability for any obligations or liabilities of any party hereto under this Agreement or for any claim, action, suit or other legal proceeding based on, in respect of or by reason of the transactions contemplated hereby.

[*signature page follows*]

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

WELL BEING LABS, LLC

By _Michael Bryant_____

Michael Bryant
President and CEO


EAGLE HEMP, LLC

By _Barry Atkins_____

Barry Atkins
President and Chief Operating Officer

# Bill of Sale

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Well Being Labs LLC, a Delaware limited liability company with offices located at 23616 Via Carino Lane, Bonita Springs, FL 34135 ("**Seller**"), does hereby grant, bargain, transfer, sell, assign, convey and deliver to Eagle Hemp LLC, a Florida limited liability company, with offices located at 2855 Interstate Drive, Suite 111, Lakeland, FL 33805 ("**Buyer**"), all of its right, title, and interest in and to the Tangible Personal Property, as such term is defined in the Asset Purchase Agreement, dated as of July 12, 2021 (the "**Purchase Agreement**"), by and between Seller and Buyer, to have and to hold the same unto Buyer, its successors and assigns, forever.

Buyer acknowledges that Seller makes no representation or warranty with respect to the assets being conveyed hereby except as specifically set forth in the Purchase Agreement.

Seller for itself, its successors and assigns, hereby covenants and agrees that, at any time and from time to time upon the written request of Buyer, Seller will do, execute, acknowledge, and deliver or cause to be done, executed, acknowledged, and delivered, all such further acts, deeds, assignments, transfers, conveyances, powers of attorney, and assurances as may be reasonably required by Buyer in order to assign, transfer, set over, convey, assure, and confirm unto and vest in Buyer, its successors and assigns, title to the assets sold, conveyed, and transferred by this Bill of Sale.

IN WITNESS WHEREOF, Seller has duly executed this Bill of Sale as of July 12, 2021.

WELL BEING LABS, LLC

By____*Michael Bryant*____

Name: Michael Bryant

Title: President and CEO

Exhibit A

# Assignment and Assumption Agreement

This Assignment and Assumption Agreement (the "**Agreement**"), dated as of July 12, 2021, is entered into between Well Being Labs LLC, a Delaware limited liability company with offices located at 23616 Via Carino Lane, Bonita Springs, FL 34135 ("**Seller**"), and Eagle Hemp LLC, a Florida limited liability company, with offices located at 2855 Interstate Drive, Suite 111, Lakeland, FL 33805 ("**Buyer**").

**WHEREAS**, Seller and Buyer have entered into a certain Asset Purchase Agreement, dated as of July 12, 2021 (the "**Purchase Agreement**"), pursuant to which, among other things, Seller has agreed to assign all of its rights, title and interests in, and Buyer has agreed to assume all of Seller's duties and obligations under the Assigned Contracts (as defined in the Purchase Agreement). However, Buyer is not assuming any liabilities incurred by the Seller prior to the date of the Agreement or the Purchase Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Definitions</u>. All capitalized terms used in this Agreement but not otherwise defined herein are given the meanings set forth in the Purchase Agreement.

2. <u>Assignment and Assumption</u>. Seller hereby sells, assigns, grants, conveys and transfers to Buyer all of Seller's right, title and interest in and to the Assigned Contracts. Buyer hereby accepts such assignment and assumes all of Seller's duties and obligations under the Assigned Contracts and agrees to pay, perform and discharge, as and when due, all of the obligations of Seller under the Assigned Contracts accruing on and after the Effective Date.

3. <u>Terms of the Purchase Agreement</u>. The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements and indemnities relating to the Assigned Contracts are incorporated herein by this reference. The parties hereto acknowledge and agree that the representations, warranties, covenants, agreements and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

4. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the internal laws of the Commonwealth of Pennsylvania without giving effect to any choice or conflict of law provision or rule (whether of the Commonwealth of Pennsylvania or any other jurisdiction).

5. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same

Exhibit B

agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

6.      Further Assurances. Each of the parties hereto shall execute and deliver, at the reasonable request of the other party hereto, such additional documents, instruments, conveyances and assurances and take such further actions as such other party may reasonably request to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement.

[*signature page follows*]

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the date first above written.

WELL BEING LABS, LLC

By_____*Michael Bryant*_____
Michael Bryant
President and CEO


EAGLE HEMP, LLC

By_____*Barry Atkins*_____
Barry Adkins
Chief Operating Officer