IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KORDEV LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>EAGLE HEMP, LLC and TRIM LIFE LABS, LLC,<br><br>                Defendants. | No. 2:21-cv-01341-NR |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Eagle Hemp, LLC and Trim Life Labs, LLC, by and through counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby file this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint.

### I.    INTRODUCTION AND BACKGROUND

On August 9, 2022, this Court held oral argument on Defendants' Motion to Dismiss Plaintiff's Amended Complaint. *See* ECF No. 21. The Court granted Defendants' Motion, dismissing Plaintiff's tort claims with prejudice but dismissing Plaintiffs' breach of contract claims against Trim Life Labs, LLC (Trim Life) and Well Being Labs, LLC (Well Being) without prejudice. *See* ECF No. 25. The Court permitted Plaintiffs to file a Second Amended Complaint ("SAC") to allege facts sufficient to support an "alter ego" or "enterprise or single-entity" theory of liability against Trim Life and Well Being. *Id.* Accordingly, on August 16, 2022, Plaintiff KorDev LLC ("KorDev" or "Plaintiff") filed its Second Amended Complaint, removing Well Being as a defendant party and alleging a single breach of contract claim against Defendants Eagle Hemp and Trim Life. *See* ECF No. 27.

This dispute arises out of the sale of a company's assets (also called Well Being) to Defendant Eagle Hemp, LLC ("Eagle Hemp"). As KorDev alleges, the Asset Purchase Agreement ("APA") governed the sale of Well Being's assets to Eagle Hemp. *See* SAC ¶ 41-42 & Ex. D. KorDev alleges that as part of the APA, Eagle Hemp agreed to enter into an exclusive Master Services Agreement ("MSA") with KorDev to develop customer service management software for Eagle Hemp. *See id.* at ¶ 42 & Ex. D at § 1.02. The Second Amended Complaint further alleges that pursuant to the MSA, Trim Life and non-party Well Being are bound to the MSA, even though neither is a party to the MSA. *Id.* at ¶ 45. KorDev alleges that both Defendants breached the exclusivity of the MSA by contracting with Konnective, which is alleged to be a competitor of KorDev. *See* SAC ¶ 59.

As discussed below, KorDev's breach of contract claim against Trim Life should be dismissed with prejudice. First, Trim Life is not a party to the MSA, and no veil-piercing theory can make that so. Second, KorDev fails to allege any factual matter sufficient to show that it is entitled to pierce Eagle Hemp's corporate veil to impose liability on Trim Life. And finally, KorDev's veil-piercing allegations seriously misconstrue veil-piercing conceptually and are unworkable by attempting to pierce the wrong entity.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations omitted). "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A.	Plaintiff fails to State a Breach of Contract Claim Against Trim Life.**

KorDev purports to being a breach of contract claim against both Eagle Hemp and Trim Life for breach of the MSA. *See* SAC at Count I. But, as Defendants explained in their Motion to Dismiss Plaintiffs' Amended Complaint, Trim Life is not a party to the MSA and therefore cannot be liable for its breach. *See* ECF No. 10 at 3-5; ECF No. 15 at 1-3. Because Plaintiff alleges no new facts that could make Trim Life a party to the MSA, the breach of contract claim against Trim Life should be dismissed with prejudice.

To be sure, the Court gave KorDev leave to amend to "supplement the factual allegations supporting its 'alter ego' or 'enterprise or single-entity' theories against Trim Life." *See* ECF No. 25. But neither of these veil-piercing theories can make Trim Life a *party* to a contract. At best, they are a means of imposing liability established in an underlying cause of action. *See Seven Springs Mountain Resort, Inc. on behalf of Sikirica v. Hess*, No. 3:21-CV-6, 2022 WL 1004178, at *10 (W.D. Pa. Apr. 4, 2022). In other words, veil piercing is merely an equitable remedy to recover against Trim Life *only if and only after* liability is established against Eagle Hemp (the only party to the MSA); it cannot be used to make Trim Life a party to the MSA for purposes of a breach of contract claim. Even so, Plaintiff's Second Amended Complaint fails to establish that KorDev is entitled to this remedy.

**B.	Plaintiff's Second Amended Complaint Fails to Show that Plaintiff Is Entitled to Recover Under Any Veil-Piercing Theory.**

Plaintiff's allegations to pierce the corporate veil fail for three reasons. First, Plaintiff's veil-piercing allegations against Trim Life are conclusory and insufficient to establish this "notoriously difficult" standard. Second, even if Plaintiff could demonstrate abuse of the corporate

form, Plaintiff fails to adduce a workable veil-piercing theory. Finally, Plaintiff has not shown that it is entitled to pierce the corporate veil of Eagle Hemp, let alone "reverse-pierce" the corporate veil of Trim Life under an enterprise theory.

"[L]imiting liability through incorporation is not a bug of corporate law but its defining feature. To fulfill its purpose, 'a corporation is an entity irrespective of, and entirely distinct from, the persons who own its stock.'" *Mortimer v. McCool*, 255 A.3d 261, 277 (Pa. 2021) (citations omitted). Accordingly, "there is a strong presumption in Pennsylvania against piercing the corporate veil." *Id.* at 268 (citation omitted) "[A]ny court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Id.* (citation omitted) "[T]he corporate form may be disregarded 'whenever justice or public policy demand, such as when the corporate form has been used to defeat public convenience, justify wrong, protect fraud, or defend crime.'" *Id.* at 278 (citation omitted) "Unlike some jurisdictions, Pennsylvania has resisted the temptation to formalize the inquiry with an ever-increasing number of predefined factors embodying the many considerations that might aid in determining whether the corporate form has been abused." *Id.* at 286. Nevertheless, the inquiry can be reduced to a two-pronged test:

> First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and second, adherence to the corporate fiction under the circumstances would sanction fraud or promote injustice.
>
> * * * *
>
> The 'fraud or injustice' element tells the court *when* to pierce, the control element tells it *against whom*.

*Id.* at 286–87 (emphasis in original) (citations omitted).

This Court allowed Plaintiff to amend its Amended Complaint to supplement its factual allegations supporting its "alter ego" and "enterprise or single-entity" theories of liability. Conceptually, and simplified, the alter ego theory is used to reach the assets of the owners or parent company of the abused corporate form, whereas the enterprise theory is used to reach the assets of sister companies through common ownership.

*__Alter Ego__:* Pennsylvania state and federal courts consider the following non-exclusive factors to determine an individual owner/parent company's derivative liability: (i) its subsidiary's gross undercapitalization for its purpose; (ii) failure to observe corporate formalities; (iii) nonpayment of dividends; (iv) the insolvency of the subsidiary; (v) siphoning of funds of the corporation by the dominant stockholder; (vi) nonfunctioning of other officers or directors; (vii) absence of corporate records; and (viii) whether the corporation is merely a facade for the operations of the dominant stockholder or stockholders. *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981) (mirroring the factors set forth in *Lumax Industries, Inc. v. Aultman*, 669 A.2d 893 (Pa. 1995). Or, in other words, "the evidence must ultimately show that the corporation was 'nothing more than a sham used to disguise [the shareholders'] use of its assets for [their] own benefit in fraud of its creditors.'" *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 576 (3d Cir. 2018) (quoting *In re Blatstein*, 192 F.3d 88, 100 (3d Cir. 1999). "The burden of proof on this issue rests with the party attempting to negate the existence of a separate entity." *See Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979) (citing *United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774 (9th Cir. 1977)).

*__Enterprise or Single-entity__***:** "Under the enterprise or single-entity theory, two or more business entities under some level of common ownership or control are treated as a single entity—or common enterprise—for the purpose of liability." *Seven Springs*, 2022 WL 1004178, at *4.

5

Courts in this district and in Pennsylvania often cite to the five-part *Miners* test: "Under [the enterprise] theory, two or more corporations are treated as one because of (1) identity of ownership, (2) unified administrative control, (3) similar or supplementary business functions, (4) involuntary creditors, and (5) insolvency of the corporation against which the claim lies." *Mortimer*, 255 A.3d at 271 (alteration in original) (quoting *Miners, Inc. v. Alpine Equip. Corp.*, 772 A.2d 691, 695 (Pa. Super. 1998).

Importantly, this test is meant to "supplement[], not supplant[], [Pennsylvania's] existing piercing standard with additional, context-specific considerations to establish when a corporate enterprise warrants piercing as such, preserving the threshold inquiry for the presence of piercing-worthy conduct by controlling actors or alter egos." *Id.* at 284. As the Pennsylvania Supreme Court explained, the "'distribut[ion] of related businesses across multiple corporate entities to secure liability protection and legal advantage' is not by itself cause for piercing the corporate veil." *Smith v. A.O. Smith Corp.*, 270 A.3d 1185, 1200 (Pa. Super. 2022) (quoting *Mortimer*, 255 A.3d at 283), *reargument denied* (Apr. 6, 2022), *appeal denied,* No. 124 WAL 2022, 2022 WL 3367103 (Pa. Aug. 16, 2022). Instead, veil-piercing cases "typically involve truly egregious misconduct" where the corporate form is abused to such a degree that "adherence to the corporate fiction under the circumstances would sanction fraud or promote injustice." *Id.* (quoting *Mortimer*, 255 A.3d at 283, 287).

### 1. *Plaintiff Failed to Allege Facts Sufficient to Establish Any Veil Piercing Theory.*

Plaintiff's veil-piercing allegations are conclusory and insufficient to establish liability. Defendants explained in their first Motion to Dismiss that ownership and control are insufficient to establish veil piercing. ECF No. 16 at 2-3. In its Second Amended Complaint, Plaintiff does little to address this flaw other than adding additional conclusory statements such as Trim Life "is

6

owned and/or controlled by Eagle or members of Eagle's ownership;" "Trim Life is wholly owned and controlled by Eagle, operates under identical executive leadership, and has no independent agency separate from Eagle;" "Eagle owned, controlled, and had authority over Trim Life;" and Trim Life was "owned by Eagle and/or by common ownership with Eagle." *E.g.*, SAC ¶¶ 8, 14, 46 & 61. These allegations are merely different ways of saying "ownership and control." The closest Plaintiff comes to alleging an abuse of the corporate form was alleging that Eagle Hemp and Trim Life "comingled funds and obligations." SAC ¶ 66. But this is nothing more than speculation based on a legal conclusion:

> The MSA obligates Eagle to pay all fees contemplated under the agreement, irrespective of whether the Covered Brands are individually liable. [**legal conclusion**] This, in itself, shows that the named defendants comingled funds and obligations, and Trim Life and Well Being operated as an alter ego of Eagle. [**speculative, conclusory, and a non-sequitur**].

SAC ¶ 66. To put these conclusory allegations into context, the plaintiff in *Seven Springs* was much more detailed in its factual allegations, and much broader.[1] There, plaintiff alleged in detail that the corporate owners commingled personal affairs and finances with their companies, paid personal expenses with corporate assets, failed to maintain corporate formalities (including bookkeeping and regular meetings), ran the entity subject to liability in an undercapitalized state, and strategically drained that entity of its assets and value into other entities the plaintiff couldn't reach all while continuing to thrive in business operations. *See Seven Springs*, 2022 WL 1004178, at *7-9. Plaintiff alleges no similar facts here, and thus failed to allege a claim for veil piercing.

### 2.  *Plaintiff's Veil Piercing Theories Are Unworkable.*

Plaintiff's Second Amended Complaint attempts to "pierce" the wrong entity, and its veil piercing theories are thus unworkable. Plaintiff alleges in conclusory fashion that Trim Life "was

---

[1] The Court directed Plaintiff specifically to *Seven Springs* to allege factual matter consistent with the veil-piercing theories therein. *See* ECF No. 25.

7

and remains undercapitalized." SAC ¶ 47; *see also id.* ¶ 61 ("upon information and belief, an undercapitalized company owned by Eagle and/or by common ownership with Eagle"). But this is irrelevant and seriously misconstrues veil-piercing conceptually. *See also* SAC ¶ 66 ("Trim Life and Well Being operated as an alter ego of Eagle"). Eagle Hemp is the corporate entity bound to the MSA and the entity thus subject to liability. It matters not whether *Trim Life* was undercapitalized; rather, it only matters whether *Eagle Hemp* was undercapitalized and thus unable to satisfy a judgement.[2] In other words, there is no "insolvency of the corporation against which the claim lies." *Seven Springs,* 2022 WL 1004178, at *5. Furthermore, Plaintiff alleges no facts showing that the Court should disregard *Eagle Hemp's* corporate form nor alleges any facts that *Eagle Hemp's* corporate form was "used to defeat public convenience, justify wrong, protect fraud, or defend crime." *Mortimer*, 255 A.3d at 278 (citation omitted).

> 3. ***Plaintiff Failed to Establish That It Is Entitled to Reverse-Pierce Trim Life's Corporate Form.***

In order to pierce Trim Life's corporate form, Plaintiff first has to show that *Eagle Hemp's* corporate from should be ignored before then showing that the joint ownership misused Trim Life's corporate from to protect the owners' personal assets against some debt. Plaintiff has not connected any of these steps. "[E]nterprise liability in any tenable form must run up from the debtor corporation to the common owner, and from there down to the targeted sister corporation(s)." *Mortimer*, 255 A.3d at 285; *see also id.* at 288 (Donohue, J., concurring) ("As stated by the Majority, enterprise liability must run up from the debtor corporation to the common owner and from there down to the targeted sister corporation.") "[I]n this frame, enterprise piercing is aptly described as triangular. But this requires a mechanism by which liability passes

---

[2] Notably, insolvency is not sufficient reason in itself to ignore the corporate form, particularly in the absence of any wrongdoing. *See Mortimer*, 255 A.3d at 286.

8

through the common owner to the sibling corporation"—i.e. "reverse-piercing." *Mortimer*, 255 A.3d at 285.

"In a reverse-piercing scenario, a claimant against the owner of a corporation must establish misuse of the corporate form to protect the owner's personal assets against some debt." *Mortimer*, 255 A.3d at 285. In other words, "[i]f [the owners of Eagle Hemp] were not individually blameworthy enough to warrant piercing, then the triangle won't close, and [Trim Life] is insulated by the gap. *Id.* at 287. Given that there are zero allegations showing that Trim Life's corporate form is being used to protect its owners' personal assets against their debt and zero allegations that Eagle Hemp's owners abused Eagle Hemp's corporate form, reverse-piercing and enterprise liability are untenable.

"[C]ourts must tread lightly when called upon to pierce the veil, whatever the doctrinal basis." *Id.* at 278. "Any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Id.* Care should be taken on all occasions to avoid making the entire theory of corporate entity useless." *Id.* (quoting *Lumax Indus.*, 669 A.2d at 895).

### III.   CONCLUSION

For the foregoing reasons, Defendant Trim Life should be dismissed from this action. And because this is KorDev's third attempt to state a claim against Trim Life, the dismissal should be with prejudice.

DATE: August 30, 2022                                Respectfully submitted,

*/s/ John K. Gisleson*
John K. Gisleson, Esquire (PA62511)
Steven N. Hunchuck, Esquire (PA327892)
Morgan, Lewis & Bockius LLP
One Oxford Centre
Thirty-Second Floor
301 Grant Street
Pittsburgh, PA 15219
(412) 560-3300 (telephone)
(412) 560-7001 (facsimile)
john.gisleson@morganlewis.com
steven.hunchuck@morganlewis.com

Kenneth M. Kliebard, Esquire (*pro hac vice* to be filed)
Morgan, Lewis & Bockius LLP
110 N. Wacker Drive
Chicago, IL 60606-1511
(312) 324-1774 (telephone)
(312) 324-1001 (facsimile)
kenneth.kliebard@morganlewis.com

*Counsel for Defendants Eagle Hemp, LLC and Trim Life Labs, LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Judge Ranjan's Practices and Procedures II.d., I hereby certify that Defendants have made good-faith efforts to confer with Plaintiff to determine whether certain pleading deficiencies properly may be cured by amendment.

*/s/ John K. Gisleson*
John K. Gisleson

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of August, 2022, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** to be served via First Class U.S. Mail and Electronic Mail on the following counsel of record:

Owen J. McGrann
George E. McGrann
McGRANNLAW LLC
4108 Spruce Road
Gibsonia, PA 15044
owen@mcgrannlaw.com
gemcg@mcgrannlaw.com

*Counsel for Kordev LLC*

/s/ *John K. Gisleson*
John K. Gisleson