**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KORDEV LLC, | ELECTRONICALLY FILED |
| Plaintiff, | |
| v. | Civil Action No. 2:21-cv-01341 |
| EAGLE HEMP, LLC, | |
| Defendant. | |

**EAGLE HEMP LLC'S ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS TO KORDEV'S SECOND AMENDED COMPLAINT**

Defendant Eagle Hemp LLC hereby answers and asserts affirmative defenses and counterclaims to Plaintiff KorDev's Second Amended Complaint as follows:

1.      Admitted in part, denied in part. Eagle Hemp admits only that KorDev is headquartered in or around Pittsburgh, Pennsylvania. Eagle Hemp denies that KorDev is a market leader. Eagle Hemp lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the same.

2.      Admitted.

3.      Admitted in part, denied in part. Eagle Admits that it retained KorDev to develop a Customer Relationship Management ("CRM") software and two sales funnels for Eagle.

4.      Admitted.

5.      Admitted in part, denied in part. Eagle Hemp admits only that it entered into a customer service management agreement in March 2021 and a traffic management agreement in May 2021. Eagle Hemp denies the remaining allegations in this paragraph.

6.      Admitted in part, denied in part. Eagle Hemp admits only that Mr. Bryant mentioned that he and the ownership team of Well Being Labs, LLC, a Wyoming limited liability

company ("Well Being") were thinking of selling Well Being.  Eagle Hemp denies the remaining allegations in this paragraph.

7.      Admitted in part, denied in part.  Eagle Hemp admits only that it was interested in potentially pursuing a transaction of some kind with Well Being.  Eagle Hemp denies that Well Being is a "known and established business in the market."

8.      Admitted in part, denied in part.  Eagle Hemp admits only that it entered into a Master Services Agreement ("MSA") with KorDev and that it entered into an Asset Purchase Agreement ("APA") with Well Being Labs, LLC ("Well Being").  The APA and MSA are written documents that speaks for themselves and any characterizations thereof are denied.  Eagle Hemp further denies as a conclusion of law that the MSA is applicable to each of Eagle Hemp, Well Being, and Trim Life Labs, LLC ("Trim Life").  Eagle Hemp further denies that Eagle Hemp owns and/or controls Trim Life.  The remaining allegations in this paragraph are conclusions of law to which no response is required and are therefore deemed denied.

9.      Denied.

10.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

11.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

12.     Admitted.

13.     Admitted.

14.     The Court dismissed Trim Life as a party on January 17, 2023.  *See* ECF No. 60. Therefore, no response is required.  To the extent a response is required, this paragraph is denied.

15.     Admitted.

16.     Admitted.

17.     Admitted.

18.     Admitted in part, denied in part.  Eagle Hemp admits only that Barry Akins contacted KorDev concerning KorDev potentially providing services to Eagle Hemp.  The remaining allegations are denied.

19.     Admitted.

20.     Denied.

21.     Admitted in part, denied in part.  Eagle Hemp admits only that it entered into a Customer Services Agreement ("CSA") with KorDev.  Further, the CSA is a written document that speaks for itself; any characterization thereof is denied.

22.     Admitted in part, denied in part.  Eagle admits only that the CSA sets out a fee structure in exchange for the proper performance of certain services.  Further, the CSA is a written document that speaks for itself; any characterization thereof is denied.

23.      Admitted in part, denied in part.  Eagle Hemp denies that KorDev "developed for Eagle" a sales funnel or that KorDev properly "began running traffic for Eagle Hemp."  Eagle Hemp admits that ads for Eagle Hemp began running on or about April 13, 2021.

24.     Denied.  Eagle Hemp further denies that KorDev provided traffic management services.

25.     Admitted in part, denied in part.  Eagle Hemp admits that it generated sales during that time period that likely exceeded $2 million.  Eagle Hemp denies the remaining allegations.

26.     Denied.

27.     Admitted in part, denied in part.  Eagle Hemp admits only that text messages were sent based on what was known by Mr. Atkins at the time but denies any characterization thereof as the text messages are documents that speaks for themselves.  Eagle Hemp denies that it was pleased or satisfied with the CRM and funnels.

28.     Admitted in part, denied in part.  Eagle Hemp admits only that text messages were sent based on what was known by Mr. Atkins at the time but denies any characterization thereof as the text messages are documents that speaks for themselves.

29.     Admitted in part, denied in part.  Eagle Hemp admits only that text message were sent based on what was known by Mr. Atkins at the time but denies any characterization thereof as the text messages are documents that speak for themselves.

30.     Admitted in part, denied in part.  Eagle admits only that Mr. Bryant mentioned that he and the rest of Well Being's ownership were interested in selling Well Being.  Eagle Hemp also admits that Mr. Bryant had an ownership interest in Well Being.  Eagle Hemp denies the remaining allegations.

31.     Denied.  Eagle Hemp lacks knowledge or information sufficient to form a belief about the truth of the allegation.  The allegation is therefore denied.

32.     Admitted in part, denied in part.  Eagle Hemp admits only that there were several rounds of discussions.  The remaining allegations in this paragraph are denied.

33.     Admitted.

34.     Admitted in part, denied in part.  Eagle Hemp admits that, at some point, Eagle Hemp and KorDev began discussion of a potential contract relating to traffic management.  The remaining allegations are denied.

35.     Admitted in part, denied in part.  Eagle Hemp admits only that Eagle Hemp and KorDev executed a Traffic Consulting Agreement ("TCA").   Eagle Hemp denies any characterization of the TCA's terms as the agreement is a written document that speaks for itself.

36.     Denied.  Eagle Hemp denies any characterization of the TCA's terms as the agreement is a written document that speaks for itself.

37.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Eagle Hemp further denies that any payment was due at that time.

38.     Denied.  Eagle Hemp denies that KorDev had the right to apply a late fee.  Further, to the extent the allegations in this paragraph are legal conclusions, those allegations are denied.  Eagle Hemp lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.  The remaining allegations are therefore denied.

39.     Admitted in part, denied in part.  Eagle Hemp admits that it submitted payment to KorDev in June.  The remaining allegations are denied.

40.     Denied as stated.  KorDev's CRM was non-compliant with applicable regulatory requirements and otherwise failed to perform, as Eagle Hemp repeatedly advised KorDev.  Further, KorDev agreed that Konnektive, which had a compliant CRM, could provide CRM services, as evidenced by KorDev's acceptance of compensation to migrate Eagle Hemp's customer data to Konnektive.  Despite payment of the agreed-upon amount by Eagle Hemp, KorDev failed to migrate Eagle Hemp's customer data to Konnektive because KorDev lacked the expertise and ability to do so.

41.     Admitted in part, denied in part.  Eagle Hemp admits that Mr. Atkins and Mr. Bryant discussed a potential transaction involving Well Being in or about July 2021.  The remaining allegations in this paragraph are denied.

42.     Admitted in part, denied in part.  Eagle Hemp admits only that the structure of the proposed transaction differed from prior discussions.  The remaining allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the APA eventually executed by Eagle Hemp and KorDev is a written document that speaks for itself; any characterization thereof is denied.

43.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the APA is a written document that speaks for itself; any characterization thereof is denied.

44.     Admitted

45.     Admitted in part, denied in part.  Eagle Hemp admits only that it entered into the MSA with KorDev.  The remaining allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

46.     Denied.

47.     Denied.  Further, this allegation relates to KorDev's veil piercing theory and was dismissed by Court Order on January 17, 2022 (ECF No. 60) and thus any such claims are not properly before this Court.  Therefore, no responsive pleading is required.

48.     Admitted in part, denied in part.  Eagle Hemp admits only that it executed the APA.  Eagle Hemp denies that it received the consideration contemplated under the APA.

49.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the APA is a written document that speaks for itself; any characterization thereof is denied.

50.     Denied.  Eagle Hemp further denies that it received any of the assets contemplated under the APA and denies that the assets had any value.

51.     Denied. The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the APA is a written document that speaks for itself; any characterization thereof is denied.

52.     Admitted in part, denied in part.  Eagle Hemp admits only that it executed the APA and MSA.  The remaining allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the APA is a written document that speaks for itself; any characterization thereof is denied.

53.     Admitted in part, denied in part.  Eagle Hemp admits only that it conducted limited due diligence inasmuch as Mr. Bryant limited the documentation and information available to Eagle Hemp.  Eagle Hemp further denies the allegations in this paragraph to the extent they are legal conclusions to which no response is required.

54.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the APA is a written document that speaks for itself; any characterization thereof is denied.

55.     Admitted in part denied in part.  Eagle Hemp admits only that Eagle Hemp entered into the MSA with KorDev.  The remaining allegations in this paragraph are denied.

56.     Admitted in part, denied in part.  Eagle Hemp admits that it entered the APA and MSA. Eagle Hemp denies that either is enforceable.  Eagle Hemp denies the remaining allegations.

The remaining allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

57.     Denied.

58.     Denied.

59.     Admitted in part, denied in part.  Eagle Hemp admits that, at a certain point based on KorDev's inability to provide a compliant, useable, and effective CRM, Eagle Hemp began discussions with Konnektive, as explained to and consented by KorDev.  Eagle Hemp denies breaching the MSA and further denies the allegations in this paragraph to the extent they are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

60.     Admitted in part, denied in part.  Eagle Hemp admits that the parties signed the MSA on or about July 12, 2021.  Eagle Hemp denies that the MSA ever became effective inasmuch as Well Being failed and/or materially failed to transfer any assets under the APA, negating the MSA for failure of consideration.

61.     Admitted in part, denied in part.  Eagle Hemp admits that the parties executed the MSA.  Well Being and Trim Life were dismissed from this action with prejudice by the Court's Order dated January 17, 2023 (ECF No. 60) and thus no response is required.  The remaining allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

62.     Denied.  Eagle Hemp lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies such allegations.  Eagle Hemp

further denies that Well Being had "considerable assets." Eagle Hemp further denies that it acquired the Well Being assets as contemplated under the APA and that the MSA ever became enforceable. The remaining allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required. Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

63.     Denied. The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required. Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

64.     Denied. The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required. Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

65.     Denied. The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required. Further, the MSA is a written document that speaks for itself; any characterization thereof is denied. Eagle Hemp does not owe any money to KorDev. To the contrary, KorDev's various breaches have damaged Eagle Hemp.

66.     Denied. The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required. Further, the MSA is a written document that speaks for itself; any characterization thereof is denied. Furthermore, the Court dismissed Plaintiff's alter ego claims by Court Order (ECF No. 60) and are not properly before the Court; thus, no response is required.

67.     Denied. The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required. Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

68.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

69.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

70.     Admitted in part, denied in part.  Eagle Hemp admits that it made two weekly revenue share payments.  Eagle Hemp denies that any other payments are due under the MSA. The remaining allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

71.     Admitted in part, denied in part.  Eagle Hemp admits only that it considered moving to Konnektive's CRM with KorDev's consent due to the material failures of KorDev's CRM. KorDev agreed to perform the migration on Eagle's behalf and accepted a $10,000 payment to do so.  KorDev never completed this work.  Eagle Hemp further denies that Konnektive performs development work as Eagle Hemp has done its own development work since July 2021.

72.     Admitted in part, denied in part.  Eagle Hemp admits only that it entered into the MSA with KorDev.  The MSA is a written document that speaks for itself; any characterization thereof is denied.  The remaining allegations in this paragraph are denied.

73.     Denied.

74.     Admitted in part, denied in part.  Eagle Hemp admits only that Barry Atkins is the CEO of Eagle Hemp and caused Eagle Hemp to enter the APA and MSA.  The remaining allegations in this paragraph are denied.

75.     Denied.

76.     Denied.

77.     Admitted in part, denied in part.  Eagle hemp admits that Mr. Atkins caused Eagle Hemp to retain Konnektive based on KorDev's breaches of the MSA (including but not limited to KorDev's non-compliant CRM) and the failure to receive any assets from Well Being under the APA.

78.     Denied. The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.  Eagle Hemp denies that written notice of breach was necessary.

79.     Denied. The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.  Eagle Hemp denies that KorDev had either the right or ability to cure the breach.

80.     Admitted in part, denied in part.  Eagle Hemp admits only that Mr. Bryant attempted to arrange a phone call with Mr. Atkins.  Eagle Hemp denies that any payments were due or owed to KorDev.  Eagle Hemp further denies that Eagle Hemp breached the MSA.  The remaining allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.

81.     Denied.  Eagle Hemp denies that it breached the MSA.  To the extent this paragraph states a legal conclusion, it is denied.  The next line in the same text message read, "I'll call later after I get this fire drill done."  Mr. Bryant responded, "Appreciate your candor.  We need to chat," to which Mr. Atkins concluded, "We will.  Dealing with some major shit right now."

82.     Admitted.

83.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the APA and MSA are written documents that speaks for themselves; any characterization thereof is denied.  Well Being failed to transfer any assets to Eagle Hemp.  Eagle Hemp further denies that it "effectively abandoned Well Being and devalued the company."

84.     Admitted in part, denied in part.  Eagle Hemp admits that Mr. Atkins texted Mr Bryant on August 25, 2021, saying "I am in the process of terminating our relationship for cause." Eagle Hemp denies that "[Mr. Atkins] did not elaborate" as he informed Mr. Bryant of KorDev's failures and deficient performance on multiple occasions.

85.     Admitted in part, denied in part.  Eagle Hemp admits only that Mr. Atkins discussed termination of the MSA with Mr. Bryant.  The remaining allegations are denied.

86.     Admitted.

87.     Denied.  Defendant Trim Life was dismissed from this action with prejudice by the Court's Order dated January 17, 2023 (ECF No. 60), and thus no response is required.  This paragraph is further denied to the extent it conflates Eagle Hemp and Trim Life.

88.     Denied.  Eagle Hemp further denies that it received the assets of Well Being as contemplated under the APA.  Further, the allegations in this paragraph are legal conclusions that are deemed denied.

89.     Denied.  Defendant Trim Life was dismissed from this action with prejudice by the Court's Order dated January 17, 2023 (ECF No. 60) and, thus, no response is required.  Further, the allegations in this paragraph are legal conclusions that are deemed denied.

90.     Denied.

91.     Denied.

## COUNT I

92.     Eagle Hemp incorporates herein by refence the foregoing paragraphs as if set forth herein.

93.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.

94.     Denied.  Defendant Trim Life was dismissed from this action with prejudice by the Court's Order dated January 17, 2023 (ECF No. 60) and, thus, no response is required. Further, the allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.

95.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

96.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

97.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

98.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

99.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

100.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.  Eagle Hemp further denies that KorDev's CRM was custom made for Eagle Hemp.

101.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

102.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

103.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

104.     Denied.  The allegations in this paragraph are legal conclusions that are deemed denied and to which no response is required.  Further, the MSA is a written document that speaks for itself; any characterization thereof is denied.

WHEREFORE, Eagle Hemp asks the Court to enter judgment in its favor and against Plaintiff and to award Eagle Hemp its attorneys' fees, costs, and such other relief as is just and proper.

## **AFFIRMATIVE DEFENSES**

Without assuming any burden of proof to which Eagle Hemp is not otherwise subject under the law, Eagle Hemp asserts and alleges the following additional defenses to Plaintiff's claims:

1.    KorDev's Second Amended Complaint fails to set forth a cause of action upon which relief may be granted.

2.    Eagle Hemp is relieved from performing under the MSA due to failure of consideration under the APA because Well Being failed to transfer all or substantially all of the Well Being assets to Eagle Hemp.

3.    Eagle Hemp was relieved from performing under the MSA due to KorDev's material breach of the same. *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 648 (Pa. 2009); *Umbelina v. Adams*, 34 A.3d 151, 159–60 (Pa. Super. Ct. 2011) ("Pennsylvania courts have long recognized the general principle of contract law providing that a material breach of a contract, which is vital to the existence of the contract, relieves the non-breaching party from any continuing duty of performance under the contract.").

4.    KorDev failed to perform to Eagle Hemp's satisfaction, and Eagle Hemp therefore is entitled to withhold payment for unsatisfactory performance under § 5.9 of the MSA.

5.    Eagle Hemp is not liable for any work contemplated under the MSA because no party satisfied the condition precedent of mutually executing any Statements of Work. *See* §§ 2.1, 2.3, 5.1 & 7.

6.    KorDev's material breaches of the MSA relieved Eagle Hemp of any notice requirement under the MSA, and, in any case, KorDev had actual notice of its breaches. *See, e.g.*, *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639 (Pa. 2009).

7.     Eagle Hemp's electronic notice of termination along with concurrent and follow up conversations with Mr. Bryant satisfied any notice requirement under the MSA (which is denied).

8.     The "notice clause" of § 7 is grammatically deficient and does not by its text require any party to provide written notice of termination.  The only condition required for termination is "cause," which Eagle Hemp had.

9.     Eagle Hemp is not subject to the penalty clause of § 7 of the MSA because Eagle Hemp terminated the MSA for cause.

10.     Eagle Hemp was not required to provide KorDev 45 days to cure its material breaches because KorDev's breaches were not curable.  *See* § 7.3

11.     KorDev's claims are barred because it did not suffer any damages for which Eagle Hemp is responsible.

12.     KorDev waived the exclusivity clause by agreeing to migrate Eagle Hemp's customer and sales data into Konnektive's CRM and by accepting payment to do so.

13.     KorDev waived the exclusivity clause by agreeing to allow Eagle Hemp to use Konnektive's CRM until KorDev could make its CRM workable, secure, and PCI compliant, which it failed to do.

14.     KorDev never provided any services for Trim Life and/or Well Being and thus no payment for performance was due.

15.     KorDev failed to mitigate its damages.

16.     The damages KorDev seeks are an unenforceable liquidated damages penalty because they are grossly disproportionate to any harm actually suffered.

17.     KorDev's claims are barred in whole or in part, and/or any recovery it may receive must be reduced because its damages are uncertain, speculative, or remote.

18.     KorDev's claims against Trim Life and Well Being are barred because the Court dismissed them pursuant to its January 17, 2023 and August 9, 2022 Orders on Eagle Hemp, Well Being, and Trim Life's Motions to Dismiss.

19.     Eagle Hemp hereby gives notice that it intends to rely upon any other defenses that may become available or apparent during discovery and hereby reserves its right to amend this Answer to assert any such defense.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant Eagle Hemp respectfully requests that this Court dismiss the Second Amended Complaint with prejudice; determine that KorDev is not entitled to any relief, including, without limitation, that for which KorDev has prayed; and enter judgment in Eagle Hemp's favor, together with costs, attorneys' fees, and such other relief as the Court may deem just and proper.

## COUNTERCLAIMS

Defendant Eagle Hemp hereby asserts its Counterclaims against Plaintiff KorDev as set forth below.

## FACTS

### A.     The Asset Purchase Agreement

1.      In the summer of 2021, Eagle Hemp and Well Being negotiated the transfer of Well Being's assets in exchange, in part, for entering into the Master Services Agreement ("MSA"). *See* Second Amended Complaint, Ex. D. [ECF No. 27].

2.      During negotiations, Michael Bryant represented that Well Being had a substantial customer list of over 1,000,000 customers.

3.      Mr. Atkins requested on multiple occasions to view the customer list, but Mr. Bryant denied him the ability to do so.

4.      Trusting Bryant, Eagle Hemp entered into the APA and associated MSA with Well Being.

5.      Accordingly, the APA required Well Being to transfer all of its assets, including the customer list and its intellectual property.

6.      The most significant asset to any e-commerce merchant, and the only Well Being asset with potential value, was Well Being's customer list.

7.      After executing the APA, however, Well Being failed to deliver its assets.

8.      Well Being did not deliver the customer list, nor did Well Being deliver the information for the Well Being website, including the necessary passwords, as it agreed to do.

9.      In fact, Well Being failed to transfer any assets.

10.     While Mr. Atkins and his partners created a Florida LLC named Well Being LLC, this entity is an empty shell that has not done any business and does not possess any assets that were to be transferred under the APA.

11.     Upon information and belief, Michael Bryant still maintains control of Well Being and the Well Being assets.

12.     In fact, Well Being's website remains operational, which directs customers to "jOLLY Nutrition" and/or Pelican Gummies, other CBD gummy brands previously unknown to Eagle Hemp.

13.     Upon information and belief, Mr. Bryant still operates this website.

14.     Because Well Being failed to deliver and Eagle Hemp thus never received the Well Being assets, the MSA is not enforceable due to failure of consideration.

**B.     The CRM**

15.     On or about January 26, 2021, Eagle Hemp entered into a Development Agreement ("DA") with KorDev.  *See* Second Amended Complaint, Ex. A [ECF No. 27].

16.     As part of the DA, KorDev agreed to develop a personalized CRM for Eagle Hemp. KorDev also agreed to create two sales funnels for Eagle Hemp.

17.     KorDev failed to create a personalized CRM and failed to create sales funnels for Eagle Hemp, whether under the CRM or under the subsequently entered MSA.

18.     A "CRM" is customer relationship management software.

19.     The purpose of a CRM is to store and maintain customer and sales information.  A CRM is used to complete online transactions, evaluate and track sales, provide sales and marketing opportunities, and maintain a customer list.  A CRM is essential to conducting e-commerce.

20.     A CRM necessarily contains sensitive personal and financial information; including customer names, addresses, and telephone numbers.  As transactions are made, credit card information is also collected as it is needed to complete sales.

21.     For this reason, CRMs must comply with Payment Card Industry ("PCI") Data Security Standards.

22.     The PCI Data Security Standards ("PCI DSS") are a set of security standards designed to ensure that all companies that accept, process, store, or transmit credit card information maintain a secure environment.

23.     PCI Compliance applies to any merchant, including Eagle Hemp, who accepts credit or debit cards as a form of payment.

24.     All major credit card companies require merchants to certify that their CRMs are compliant with these PCI standards.

25.     For example, PCI DSS forbid the storage of CVV codes, the three-digit security number on the back of a credit card.

26.     Additionally, to run an e-commerce business, a merchant needs to obtain credit card processing capacity.  In other words, merchants enter into processing agreements with credit card companies to process online sales.

27.     E-commerce merchants, including Eagle Hemp, depend on credit card processing to conduct their business.

28.     Depending on the volume of sales and creditworthiness, a merchant is extended a certain amount in dollars of credit card processing a day.

29.     As part of these agreements, all major credit card companies require merchants to certify that their CRMs are PCI compliant.

20

30.     KorDev's CRM, which was never a custom system for Eagle Hemp, was not PCI compliant.

31.     As a result, Eagle Hemp was unable to complete the necessary certifications for its credit card processing, putting its entire business at risk.

32.     For example, in or about May 2021, Barry Akins was reviewing customer information in KorDev's CRM and noticed that KorDev's CRM was storing CVV codes in violation of PCI DSS and merchant processing agreements.

33.     Barry Atkins informed Michael Bryant of this on multiple occasions and advised it was unacceptable.

34.     Another important aspect of a CRM is that it is integral to detecting and preventing fraudulent transactions.   Further, if a CRM is not secure, the customer data and credit card information is vulnerable and can be used to create fraudulent transactions.

35.     For example, advertisers direct customers to a merchant's sales funnel by placing ads that a consumer can click to access.   If this results in a sale, the advertiser receives a commission.

36.     Fraudsters have an incentive to run fake traffic because of the commissions on sales.  Even though a fake sale can later be voided, the commission is still due.

37.     Additionally, a voided or canceled sale results in a chargeback fee to the merchant by the credit card processor.

38.     Thus, not only does the merchant have to cover the commission for a fraudulent transaction, it also gets penalized for the chargeback by the credit card company.

39.     A merchant, like Eagle Hemp, is forced to pay a fee for every chargeback. The chargebacks can cripple a business due to the resulting fees and the loss of a credit processing.

40. While using Bryant's CRM, Eagle Hemp's business was the victim of numerous fraudulent transactions.

41. In one instance, a fraudster was able to run a single credit card over 100 times in a single day. KorDev's CRM did not and could not identify and prevent this.

42. KorDev's CRM failed to detect fraudulent or potentially fraudulent transactions. An industry standard and compliant CRM, such as Konnektive's, is able to detect and either prevent or minimize such activity.

43. KorDev's CRM also lacked the ability to assess taxes to transactions, despite Eagle Hemp's direction to KorDev that it must do so.

44. Eagle Hemp uses TaxJar, a software program that automatically assesses and collects sales tax at the point of sale.

45. At Eagle Hemp's request, KorDev agreed to interface TaxJar into the CRM.

46. In exchange Eagle Hemp paid KorDev $10,000 dollars to perform this service.

47. KorDev accepted payment but was never able to interface TaxJar into the KorDev's CRM, again demonstrating that it lacked the technical ability to competently operate a CRM.

48. KorDev's CRM lacked proper security features, putting customer information and their credit card information at risk.

49. KorDev's CRM at bottom didn't work. The CRM was unable to run reports, track sales, or reconcile sales with those from the credit processors.

50. Barry Atkins and Michael Bryant had numerous discussions in or around June 2021 regarding the material flaws in KorDev's CRM.

51. In or about June 2021, Eagle Hemp had to begin using a CRM hosted by a different company, Konnektive, with KorDev's knowledge and consent. By using Konnektive's CRM, the

fraudulent activity on Eagle Hemp's website ceased and the customer data on the Konnektive CRM was secure.

52.     In order to relieve its business from fraudulent transactions, chargeback fees, loss of customer satisfaction, deficient data security, and the inability to track sales information, Eagle Hemp discussed with Michael Bryant of KorDev the need to migrate the customer information currently stored on KorDev's CRM into Konnektive's CRM.

53.     Because KorDev was unable to provide a working, compliant CRM, KorDev agreed to perform the migration on Eagle Hemp's behalf for a fee.

54.     Eagle Hemp paid KorDev $10,000 to perform this migration, which KorDev accepted.

55.     KorDev, however, never migrated Eagle Hemp's data into the Konnektive CRM.

56.     To this day, KorDev has improperly retained Eagle Hemp's customer and sales data and blocked Eagle Hemp's access to its own data, requiring Eagle Hemp to create that data.

### C.     Customer Services

57.     Pursuant to the MSA, KorDev also agreed to provide "call, SMS, and email support and sales conversion services" ("Customer Services").  MSA § 2.3.

58.     KorDev lacked the resources, sophistication, and competence to handle Eagle Hemp's Customer Services.

59.     In the summer of 2021, Eagle Hemp was processing 2,000 plus transactions per week and growing.  At that volume, even a small percentage translated into a large number of customer complaints.  KorDev lacked the resources and capability to handle this volume.

60.     KorDev had one person answering a single phone for the hundreds of daily transactions.  With only one person answering calls, even a moderate volume was unmanageable.

23

61.     Customers would leave messages in voicemail, but their calls were not returned.

62.     Because customers were not attended to, frustrated customers would cancel their orders, resulting in chargeback fees assessed to Eagle Hemp.  Moreover, Eagle Hemp was losing customers.

63.     Additionally, and related to KorDev's CRM's inability to secure customer data and monitor fraudulent transactions, customers would call to report fraudulent transactions on their credit cards.  That is, customers called customer service to report purchases that they never made.

64.     These customer complaints have been eliminated since the integration into Konnektive's CRM.

65.     Upon information and belief, KorDev and/or its principal Michael Bryant was profiting off of these fraudulent transactions through commissions or kickbacks.

66.     Upon information and belief, KorDev was selling or otherwise profiting off of stolen customer information by directing fraudulent traffic into Eagle Hemp's sales funnels.

67.     Upon information and belief, KorDev was selling, sharing, or disclosing customer information, including credit card information in exchange for a kickbacks or commissions on transactions passing through KorDev's CRM.

68.     Because of KorDev's failures, Eagle Hemp was required to obtain customer services through another entity.

**D.     Traffic Management**

69.     As part of the MSA, KorDev agreed to provide "traffic consulting, including identifying and placing marketing and advertisements designed to provide leads to [Eagle Hemp's] sales funnels."

70.     KorDev never provided these services.

71.     By way of background, an affiliate publisher runs ads for product such as CBD products for a fee.  The publisher earns a commission based on the number of sales per click on the merchant's link (i.e., the Earnings Per Click or EPC rate).  The traffic manager is supposed to monitor EPC.  If the approval rates start to climb too high, then the commission paid for each sale rises as well.

72.     Accordingly, the traffic manager will "scrub" the transactions to reduce the EPC.

73.     In e-commerce, the scrub rate is constantly adjusted up and down to minimize expense while maximizing traffic.

74.     Because KorDev was not managing the scrub rate, Eagle Hemp was paying publishers a higher EPC—i.e. a higher commission—than it otherwise would have.

**E.      KorDev's Breaches of the MSA**

75.     Before, during, and after the execution of the APA and MSA, KorDev was aware of the material deficiencies with the CRM as Michael Bryant and Barry Atkins regularly discussed those deficiencies.

76.     Barry Atkins informed Michael Bryant and KorDev that Eagle Hemp would only use KorDev's CRM if it became complaint with industry standards and incorporated the necessary security features.

77.     Despite ample opportunity to do so, KorDev was unable to remedy the CRM's material deficiencies.

78.     Because of the deficiencies in its CRM, KorDev agreed to and permitted Eagle Hemp to use Konnektive's CRM, which was secure, working, and PCI complaint.

79.     KorDev waived any putative right to exclusivity by agreeing to and permitting Eagle Hemp to use Konnektive's CRM, which was secure, working, and PCI complaint.

80.     As KorDev's failures continued to accrue, it became evident that KorDev was both unable and unwilling to perform under the MSA.

81.     KorDev was unable to cure its material breaches of the MSA by failing to deliver a working, secure, and PCI compliant CRM.

82.     KorDev was unable to cure its material breaches of failing to provide Customer Services.

83.     KorDev was unable to cure its material breaches of failing to provide Traffic Management.

84.     KorDev's failures constituted a breach of the fundamental essence and purpose of the contractual relationship.

85.     KorDev has irreparably damaged the trust between the contracting parties.

86.     Barry Atkins informed Michal Bryant through electronic communication that Eagle would be terminating the MSA.

87.     In subsequent telephone conversations (with and without KorDev's counsel present), Mr. Atkins repeatedly discussed KorDev's material breaches.

88.     KorDev, however, still did not cure its breaches, which were uncurable.

89.     As a result of KorDev's failures, Eagle Hemp terminated its contractual relationship with KorDev.

90.     KorDev has caused damages to Eagle Hemp.

## Count I – Breach  of Contract (MSA)

91.     Eagle Hemp incorporates herein by reference each of the preceding paragraphs as if set forth at length herein.

92.     KorDev and Eagle Hemp entered into the MSA on July 8, 2021.

93.     Assuming *arguendo* the MSA was enforceable, KorDev was required to provide:

(a)     traffic consulting, including identifying and placing marketing and advertisements designed to provide leads to Customer's sales funnels;

(b)     e-commerce development, including a personalized CRM; and

(c)     call, SMS, and email support and sales conversion services for [Eagle Hemp].

94.     KorDev materially breached the MSA by failing to provide a working, secure and PCI Compliant CRM.

95.     KorDev materially breached the MSA by failing to provide Customer Services sufficient to handle the volume of Eagle Hemp's customer inquiries.

96.     KorDev materially breached the MSA by failing to provide traffic management.

97.     KorDev failed to cure its material breaches.

98.     KorDev's material breaches were not curable.

99.     As a result of KorDev's material breaches, Eagle Hemp has suffered damages.

## Count II – Breach  of Contract (TaxJar Integration)

100.    Eagle Hemp incorporates herein by reference each of the preceding paragraphs as if set forth at length herein.

101.    KorDev orally agreed to integrate TaxJar into its CRM system for a fee.

102.    Alternatively, if the parties did not reach an oral agreement concerning integration of TaxJar, then the parties' Development Agreement ("DA") applied to that work.

103.    As part of the DA, KorDev agreed to provide "[d]evelopment services, including development of a personalized CRM for Customer's CBD products."

104.    Eagle Hemp paid KorDev the agreed-upon fee.

105.    KorDev failed to integrate the TaxJar software into KorDev's CRM.

106.    KorDev thus breached the parties' oral agreement and/or the DA.

107.    Eagle Hemp has suffered damages as a result of KorDev's failure to perform.

108.    Accordingly, Eagle Hemp has suffered damages.

### Count III – Breach of Contract (Konnektive Migrations)

109.    Eagle Hemp incorporates herein by reference each of the preceding paragraphs as if set forth at length herein.

110.    KorDev orally agreed to migrate Eagle Hemp's customer and sales data into Konnektive's CRM system for a fee.

111.    Alternatively, the parties entered into a Development Agreement ("DA") that applied to that work inasmuch as KorDev agreed to provide "[d]evelopment services, including development of a personalized CRM for Customer's CBD products."

112.    Eagle Hemp paid KorDev the fee to perform that work.

113.    KorDev failed to migrate Eagle Hemp's customer and sales data into Konnektive's CRM.

114.    KorDev thus breached the parties' oral agreement and/or the DA.

115.    Eagle Hemp has suffered damages a result of KorDev's failure to perform.

### Count IV – Unjust Enrichment

116.    Eagle Hemp incorporates herein by reference the preceding paragraphs.

117.    To the extent the MSA was not an enforceable contract, KorDev promised and agreed to provide the services identified above.

118.    Eagle Hemp made payments to KorDev in reliance on KorDev's promises and agreement to provide those services.

119.    KorDev failed to perform and/or properly perform the services.

120.   KorDev has been unjustly enriched by payments Eagle Hemp made to KorDev.

121.   It would be unjust and inequitable for KorDev to retain the payments made by Eagle Hemp.

### Count V -- Declaratory Judgment

122.   Eagle Hemp incorporates herein by reference each of the preceding paragraphs as if set forth at length herein.

123.   "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.

124.   There is an actual dispute over the validity and enforceability of the MSA.

125.   Eagle Hemp did not receive the promised consideration under the Asset Purchase Agreement.

126.   KorDev engaged in multiple, material breaches of the MSA and has been unable or unwilling to perform the assigned responsibilities under the MSA.

127.   The parties have adverse legal interests that would be conclusively resolved by a determination that the MSA is invalid for failure of consideration or, in the alternative, by finding that Eagle Hemp properly terminated the MSA based on multiple material breaches of the MSA that go to the essence of the contract.

### Request for Relief

WHEREFORE, Eagle Hemp respectfully requests that the Court enter judgment whereby:

a.   Eagle hemp is awarded damages on its Counterclaims in an amount to be determined at trial, together with pre- and post-judgment interests, costs and attorneys' fees;

b.      The Court declares that the Master Services Agreement is not enforceable due to failure of consideration or, in the alternative, that Eagle Hemp properly terminated the Master Services Agreement; and

c.      Eagle Hemp is awarded all other relief that this Court deems just and proper.

DATE: January 31, 2023                     Respectfully submitted,

                                           /s/ John K. Gisleson
                                           John K. Gisleson, Esquire (PA62511)
                                           Steven N. Hunchuck, Esquire (PA327892)
                                           Morgan, Lewis & Bockius LLP
                                           One Oxford Centre
                                           Thirty-Second Floor
                                           301 Grant Street
                                           Pittsburgh, PA 15219
                                           (412) 560-3300 (telephone)
                                           (412) 560-7001 (facsimile)
                                           john.gisleson@morganlewis.com
                                           stevenhunchuck@morganlewis.com

                                           *Counsel for Defendant, Eagle Hemp, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2023, a true and correct copy of the foregoing **EAGLE HEMP LLC'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO KORDEV'S SECOND AMENDED COMPLAINT** was electronically filed with the Clerk of Court for the Western District of Pennsylvania using the Court's CM/ECF Court Filing system, which will send notification of such filing to all registered counsel of record.

*/s/ John K. Gisleson*
John K. Gisleson