IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KORDEV LLC,<br><br>    Plaintiff,<br><br> v.<br><br>EAGLE HEMP, LLC,<br><br>    Defendant. | No. 2:21-cv-01341-NR |

**PLAINTIFF KORDEV LLC'S ANSWER TO COUNTERCLAIMS**

Plaintiff KorDev LLC hereby answers and asserts affirmative defenses to Defendant Eagle Hemp, LLC's Counterclaims (Doc. 65) as follows:

1. Admitted.

2. Denied.

3. Admitted in part, denied in part. KorDev admits that Mr. Atkins requested at least once to see Well Being's customer list, and Mr. Bryant declined to share the customer list prior to the closing of a deal with respect to Well Being. The allegations of paragraph 3 are otherwise denied.

4. Admitted in part, denied in part. KorDev admits that Eagle Hemp entered into the APA and MSA. KorDev is without sufficient information to admit or deny the allegation to the extent it alleges Eagle Hemp's belief(s) or state of mind in doing so, but KorDev denies that it made any material misstatement or misrepresentation.

5. Admitted.

6. Admitted in part, denied in part. KorDev admits that Well Being's customer list was a significant asset and that it has value, but denies that it is or was the only Well Being asset

with potential value.

7. Denied.

8. Denied.

9. Denied.

10. Admitted in part, denied in part.  KorDev admits, on information and belief, that Mr. Atkins created or caused to be created a Florida limited liability company by the name of Well Being LLC.  KorDev lacks knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 9 and they are, therefore, denied.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Admitted.

16. Admitted.

17. Denied.

18. Admitted.

19. Admitted in part, denied in part.  KorDev admits that a CRM generally is a technology for managing a company's interactions with customers and data regarding the company's sales performance.  A given CRM can be set up to do different things, but it does not itself necessarily process or complete online sales transactions.  The allegations of paragraph 19 are otherwise denied.

20. Admitted in part, denied in part. KorDev admits that a CRM generally will contain or store customer names and addresses, but KorDev denies that a CRM "necessarily contains"

customer telephone numbers or credit card information.

21. Denied.

22. Admitted in part, denied in part.  KorDev admits that PCI DSS requirements apply to entities that store, process or transmit cardholder data and/or sensitive authentication data above certain thresholds.  The allegations of paragraph 22 are otherwise denied, and KorDev specifically denies that it or the CRM it developed for Eagle Hemp were subject to PCI DSS requirements.  Eagle Hemp, however, was responsible for ensuring that such account data was protected by the entities who performed and/or managed merchant processing for transactions per applicable PCI DSS requirements.  Neither KorDev nor its CRM performed or managed merchant processing.

23. Denied.

24. Denied.

25. Admitted in part, denied in part.  KorDev admits that PCI DSS requirements provide that card verification codes cannot be stored after authorization.  The allegations of paragraph 25 are otherwise denied.

26. Admitted in part, denied in part.  KorDev admits that, as a practical matter, an e-commerce business needs to either be able to process credit cards itself or contract with a third party service provider to process credit card payments for it.  The allegations of paragraph 26 are otherwise denied.

27. Admitted.

28. Admitted.

29. On information and belief, denied.

30. Admitted in part, denied in part.  KorDev admits that the CRM it developed and used for Eagle Hemp did not itself separately and independently meet all PCI DSS requirements, but it

was not required to.  The allegations of paragraph 30 are otherwise denied.

31. Denied.

32. Denied.

33. Denied.

34. Admitted in part, denied in part.  KorDev admits only that if a CRM stores complete credit card information and if the CRM is not reasonably secure, such information could be vulnerable to certain threats.  The allegations of paragraph 34 are otherwise denied.

35. Admitted, though the term "advertisers" is vague and non-specific.

36. Denied.

37. Admitted.

38. Admitted.

39. Admitted.

40. Denied.

41. Denied.

42. Denied.

43. Admitted in part, denied in part.  KorDev admits that the CRM it produced for Eagle Hemp did not assess or collect taxes, but it is denied that such was required or that Eagle Hemp directed KorDev that it must do so.

44. Admitted in part, denied in part.  KorDev admits that TaxJar is a cloud-based platform sold to businesses to manage sales tax compliance.  The allegations of paragraph 44 are otherwise denied.

45. Admitted.

46. Admitted.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Admitted in part, denied in part. KorDev admits that Eagle Hemp requested to use Konnektive's CRM. KorDev did not object to that request. The allegations of paragraph 52 are otherwise denied.

53. Denied.

54. Denied.

55. Admitted in part, denied in part. KorDev admits that it did not migrate Eagle Hemp's historical data from KorDev's CRM to Konnektive, but KorDev denies that it agreed to do so or that Eagle Help asked it to do so. The allegations of paragraph 55 are otherwise denied.

56. Denied.

57. Admitted.

58. Admitted in part, denied in part. KorDev denies that it lacked the resources, sophistication, and competence to handle customer service for Eagle Hemp when it began doing so. However, as Eagle Hemp's sales significantly increased as a result of KorDev's CRM and other services, Eagle Hemp's customer service needs began to exceed KorDev's capacity. KorDev repeatedly told Eagle Hemp this and advised it to engage a vendor that had the capacity to handle Eagle Hemp's needs as its growth continued. Eagle Hemp refused to do so. The allegations of paragraph 58 are otherwise denied.

59. Admitted in part, denied in part. KorDev denies that it lacked the resources and

capability to handle customer service for Eagle Hemp when it began doing so. However, as Eagle Hemp's sales significantly increased as a result of KorDev's CRM and other services, Eagle Hemp's customer service needs began to exceed KorDev's capacity. KorDev repeatedly told Eagle Hemp this and advised it to engage a vendor that had the capacity to handle Eagle Hemp's needs as its growth continued. Eagle Hemp refused to do so. The allegations of paragraph 59 are otherwise denied.

60. Admitted in part, denied in part. KorDev denies that it lacked the resources and capability to handle customer service for Eagle Hemp when it began doing so. However, as Eagle Hemp's sales significantly increased as a result of KorDev's CRM and other services, Eagle Hemp's customer service needs began to exceed KorDev's capacity. KorDev repeatedly told Eagle Hemp this and advised it to engage a vendor that had the capacity to handle Eagle Hemp's needs as its growth continued. Eagle Hemp refused to do so. The allegations of paragraph 60 are otherwise denied.

61. Admitted in part, denied in part. KorDev denies that it lacked the resources and capability to handle customer service for Eagle Hemp when it began doing so. However, as Eagle Hemp's sales significantly increased as a result of KorDev's CRM and other services, Eagle Hemp's customer service needs began to exceed KorDev's capacity. KorDev repeatedly told Eagle Hemp this and advised it to engage a vendor that had the capacity to handle Eagle Hemp's needs as its growth continued. Eagle Hemp refused to do so. The allegations of paragraph 61 are otherwise denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Admitted in part, denied in part. KorDev admits that it repeatedly told Eagle Hemp that because Eagle Hemp's sales had significantly increased as a result of KorDev's CRM and other services, Eagle Hemp's customer service needs exceeded KorDev's capacity and Eagle Hemp needed to engage a vendor that had the capacity to handle Eagle Hemp's needs as its growth continued. To KorDev's knowledge, Eagle Hemp never did so. The allegations of paragraph 68 are otherwise denied.

69. Admitted.

70. Denied.

71. Admitted in part, denied in part. KorDev admits that publishers (or networks) run ads for a fee, but the fee is typically based upon the number of completed sales and not EPC rate. KorDev further admits that a traffic manager monitors EPC. The allegations of paragraph 71 are otherwise denied.

72. Admitted in part, denied in part. KorDev admits that a traffic manager will "scrub" transactions, but not "to reduce the EPC" but rather to manage it at a consistent level so that the publisher will continue run the ads. The allegations of paragraph 72 are otherwise denied.

73. Admitted in part, denied in part. KorDev admits that a traffic manager will "scrub" transactions, but not to minimize expense so much as to spread out completed sales to avoid peaks and troughs and maintain the ad as an attractive proposition for the publisher.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. KorDev hereby incorporates by reference each of its responses to the preceding paragraphs as if set forth fully herein.

92. Admitted in part, denied in part. KorDev and Eagle Hemp signed the MSA on July 12, 2021, and the MSA was to be effective as of July 8, 2021.

93. Admitted.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. KorDev hereby incorporates by reference each of its responses to the preceding paragraphs as if set forth fully herein.

101. Admitted.

102. Denied.

103. Admitted.

104. Admitted.

105. Denied.

106. Denied.

107. Denied.

108. Denied.

109. KorDev hereby incorporates by reference each of its responses to the preceding paragraphs as if set forth fully herein.

110. Denied.

111. Denied.

112. Denied.

113. Denied.

114. Denied.

115. Denied.

116. KorDev hereby incorporates by reference each of its responses to the preceding paragraphs as if set forth fully herein.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. KorDev hereby incorporates by reference each of its responses to the preceding paragraphs as if set forth fully herein.

123. The allegations of Paragraph 123 purport to quote, in part, a statute, which statute speaks for itself and/or purports to state a legal conclusion to which no response is required. To the extent a response is required, the allegation is denied.

124. Admitted.

125. Denied.

126. Denied.

127. Denied.

WHEREFORE, KorDev specifically denies that Eagle Hemp is entitled to any relief and asks the Court to enter judgment in its favor and against Eagle Hemp on the Counterclaims and to award KorDev its attorneys' fees, costs, and such other relief as is just and proper.

**AFFIRMATIVE DEFENSES**

Without assuming any burden of proof to which KorDev is not otherwise subject under the law, KorDev asserts and alleges the following additional defenses to the Counterclaims:

1. KorDev denies all allegations not specifically admitted herein and denies that Eagle Hemp is entitled to any of the relief requested.

2. To the extent KorDev failed to perform any contractual obligation to Eagle Hemp,

it is relieved from performing by Eagle Hemp's prior material breach.

3. To the extent KorDev failed to perform any contractual obligation to Eagle Hemp, it did so at Eagle Hemp's request and/or direction.

4. To the extent Eagle Hemp claims it terminated the MSA, it did so without cause in violation of Section 7 thereof.

5. To the extent Eagle Hemp claims it terminated the MSA for cause, it failed to comply with the condition precedent set forth in Section 7 thereof that allegations of for cause termination must provide written notice of the alleged termination cause."

6. To the extent Eagle Hemp claims KorDev materially breached any provision of the MSA, such claim is waived by Eagle Hemp's failure to provide KorDev with written notice of any such alleged breach and 45 days in which to cure the same as required by Section 7.3 of the MSA.

7. Eagle Hemp's damages, if any, were the result of its own neglect, negligence, mistake, breaches of contract, and course of conduct.

8. Eagle Hemp failed to mitigate its damages, if any.

9. KorDev hereby gives notice that it intends to rely upon any other defenses that may become available or apparent during discovery and hereby reserves the right to amend this Answer to assert any such defense.

**PRAYER FOR RELIEF**

WHEREFORE, KorDev respectfully requests that the Court dismiss Eagle Hemp's Counterclaims with prejudice; determine that Eagle Hemp is not entitled to any relief, including, without limitation, that for which Eagle Hemp has prayed; and enter judgment in KorDev's favor on the Counterclaims, together with costs, attorneys' fees, and such other relief as the Court may

deem just and proper.

DATE:  February 21, 2023    Respectfully submitted,

*/s/ Tillman J. Finley*
Tillman J. Finley (DC477737)
tfinley@marinofinley.com
Daniel Marino (PA38892; *pro hac vice*)
dmarino@marinofinley.com
MARINO FINLEY LLP
818 Connecticut Avenue, N.W., Suite 801
Washington, DC  20006
Tel:  202.223.8888

*Attorneys for Plaintiff KorDev LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 21st day of February, 2023, the foregoing was filed with the Clerk of Court for the United States District Court for the Western District of Pennsylvania using the Court's CM/ECF system, which will send notification of such filing to all registered counsel of record.

*/s/ Tillman J. Finley*
Tillman J. Finley